(82 Misc. Rep. 531 )

## In re VOM SAAL'S WILL.

(Surrogate's Court, Schoharie County.   November, 1913.)

1. WILLS (§ 693*)—VALIDITY OF PROVISION—POWER OF SALE TO EXECUTOR.

A testamentary authority to executors "to sell and convert into cash, on such terms and conditions as they may think best, any or all property, either real or personal, of which I may die seised or possessed, except such articles as I have specifically bequeathed," is valid.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1655–1661; Dec. Dig. § 693.*]

2. EXECUTORS AND ADMINISTRATORS (§ 327*)—SALE OF PROPERTY—CONTROL OF DISCRETION.

The manner of the exercise of the discretion vested in executors by a testamentary power to sell and convert property into cash may be reviewed by the courts on behalf of the interested parties.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1344; Dec. Dig. § 327.*]

3. TRUSTS (§§ 179, 217*)—CONSTRUCTION—SALE OF PROPERTY—INVESTMENT OF PROCEEDS.

A testamentary power to executors to invest the proceeds of a sale of the property as they, in their absolute discretion, deem advisable, although such investments be not such as are permitted for trust funds by the ordinary rules of law, permitted them to invest the proceeds in securities other than court securities or those mentioned in Decedents' Estate Law (Consol. Laws 1909, c. 13) § 3, provided they used such diligence and prudence therein as would be exercised by prudent men in their own like business concerns.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 233, 301–304, 306–309; Dec. Dig. §§ 179, 217.*]

4. TRUSTS (§ 217*)—SALE OF PROPERTY—INVESTMENT OF PROCEEDS—VALIDITY OF PROVISION.

A testamentary power to executors to invest trust funds in securities other than so-called court securities or those mentioned in Decedents' Estate Law (Consol. Laws 1909, c. 13) § 3, providing diligence and prudence be exercised in making the investment, is not invalid.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–304, 306–309; Dec. Dig. § 217.*]

5. TRUSTS (§ 179*)—INVESTMENT OF TRUST FUNDS—LIABILITY OF EXECUTORS.

Where executors, acting pursuant to the discretion vested in them by the will, do not invest the trust funds in securities such as are mentioned in Decedents' Estate Law (Consol. Laws 1909, c. 13) § 3, they may be held liable for loss in case they have not made the investment in good faith in the exercise of the prudence and diligence which would characterize a good careful business man under the circumstances, but not otherwise.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 233; Dec. Dig. § 179.*]

6. WILLS (§ 683*)—VALIDITY OF PROVISION.

A testamentary provision that "any or all of the trusts or legacies, hereinafter directed to be set apart, may be set apart in the discretion of my executors, in money or property belonging to me at the time of my decease, at such valuations as my said executors in their absolute and uncontrolled discretion may deem advisable," is valid.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1603–1606; Dec. Dig. § 683.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. WILLS (§ 651*)—COST OF LITIGATION—VALIDITY OF PROVISION.

   A testamentary provision, directing that, in case of any litigation aris-
ing as to the construction of the will or any question growing out thereof,
all the costs, disbursements, counsel fees, and expenses attendant thereon,
which have been incurred by the executors or trustees, shall be charged
against the amount coming. under the will to the persons commencing or
joining in such legal proceedings, is void.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1542; Dec. Dig. §
651.*]

   Proceedings on the probate of the will of Lina J. Vom Saal, etc.
Decreed according to opinion.

   Harrington, Bigham & Englar, of New York City (George M. Pal-
mer, of Cobleskill, and Oscar R. Houston, of New York City, of coun-
sel), for proponents and certain legatees.

   Claude B. Mayham, of Schoharie, for Mrs. Gordon, legatee.

   BEEKMAN, S.  Mrs. Gordon, a daughter and legatee, first filed an
answer alleging that the paper writing was not the last will and testa-
ment of the decedent; that it was not her free act; that the subscrip-
tion and the publication thereof were procured by fraud and undue in-
fluence; that the testatrix was not of sound mind; and that the paper
was not executed as a will in conformity with the statute.  After the
taking of some testimony on behalf of contestant, an amended answer
was filed. containing substantially the same objections as the original
answer, and further alleging that certain provisions of the will were
invalid, and asking for the construction thereof; the validity and con-
struction or effect of certain provisions being thus expressly put in is-
sue under section 2624 of the Code.

   Immediately after the filing of the amended answer, and without in-
troducing any further evidence, all the objections to the probate of the
will were withdrawn.  The will was duly executed, and the testatrix, at
the time of the execution thereof, was, in all respects, competent to
make a will and devise real estate, and was not under restraint, and a
decree will be entered, admitting the will to probate and ordering letters
testamentary to be issued to the executors who may qualify thereunder.

   The answer alleges:

   "That the provision of. said alleged will or paper contained in clause or
paragraph numbered 'eighth' thereof, authorizing and empowering the execu-
tors 'to sell and convert into cash, upon such terms and conditions as they
may think best, any or all of the property, either real or personal, of which
I may die seised or possessed, except such articles as I have hereinbefore spe-
cifically bequeathed, and to invest and reinvest the proceeds, in such amounts
and in such manner as may to them in their absolute discretion, seem ad-
visable, although the said investments may not be of the character permitted
for the investment of trust funds by the ordinary rules of law,' is illegal, in-
valid, and void:"

   [1] I hold that the portion authorizing the executors "to sell and
convert into cash, on such terms and conditions as they may think best,
any or all property, either real or personal, of which I may die seised

or possessed, except such articles as I have specifically bequeathed," is valid.

[2] We cannot now anticipate all the questions which may possibly arise as to the exercise of the powers therein given. If any such questions properly arise, they will be determined on the final judicial settlement of the accounts of the executors.

[3-5] The contention of the objecting legatee is that the remaining portion of the provision above quoted as to the investment of the trust funds is illegal and void for the reason that the executors and trustees are not by law allowed to invest in any securities except government or real estate securities, or in such others as the Legislature may designate, and her attorney claims that that portion of the clause is void as against public policy, and cites the following authorities, but they do not support that proposition:

In Matter of Wotton, 59 App. Div. 584, 69 N. Y. Supp. 753, there was no provision in the will giving the trustee any right to exercise discretion in the character of investments.

In Matter of Reed, 45 App. Div. 196, 61 N. Y. Supp. 50, the executor who was charged with a loss had mingled a large portion of the moneys with his individual funds, "and a large portion of them was used by him in a venture he had in real estate in the suburbs of Denver, Colo.," and the evidence tended to show the speculative condition of affairs in the suburbs of Denver at the time when the trustee made his venture in the placing of the funds. Mortgages were taken in another western state on unimproved lands.

In Matter of Hall, 164 N. Y. 196, 58 N. E. 11, the will gave the executors "full power to reinvest the proceeds of such sale or other act as aforesaid in any security real or personal which they may deem for the benefit of my estate and calculated to carry out the intention of this my will." The testator, himself, had been in the umbrella business, and by his will he directed that his interest in the business be closed on the 1st day of July or January immediately following his decease. The proceeds of the sale were invested by the trustees in the preferred or debenture stock of a corporation having no real estate or plant and formed by the consolidation of several firms at the time engaged in the manufacture of umbrellas; that corporation being organized to conduct the manufacture and sale of umbrellas. One of the firms, from the consolidation of which the new corporation sprang, was that of the trustee, in which firm the testator at the time of his death was a partner. It was pointed out by the court that the testator certainly never intended that the money that he had directed to be withdrawn from the business should be invested in the same business by his trustee. The following is the language of the Court of Appeals in Matter of Hall:

"The surrogate's decree was unanimously affirmed by the Appellate Division, which, while it held that under the will the trustees were not limited to what might be called ordinary trust investments, was of opinion that the investment was speculative and hazardous, and therefore improper. With this view we agree. * * * The range of so-called 'legal securities' for the investment of trust funds is so narrow in this state that a testator may well be disposed to grant to his executors or trustees greater liberty in placing the funds of the

estate. But such a discretion, in the absence of words in the will giving greater authority, should not be held to authorize investment of the fund in new speculative or hazardous ventures. If the trustees had invested in the stock of a railroad, manufacturing, banking, or even business corporation, . which, by its successful conduct for a long period of time, had achieved a standing in commercial circles and acquired the confidence of investors, their conduct would have been justified, although the investment proved unfortunate."

This seems to be the latest decision of the Court of Appeals on this subject.

In the case of King v. Talbot, 40 N. Y. 76, the testator appointed his executors, "intrusting to their discretion the settlement of my affairs and the investment of my estate for the benefit of my heirs." The court says:

"The real inquiry, therefore, is, in my judgment in the case before us, and in all like cases: Has the administration of the trust, created by the will of Charles W. King, for the benefit of. the plaintiff, been governed by fidelity, diligence, and prudence? If it has, the defendants are not liable for losses which nevertheless have happened."

A large portion of the estate was invested in stock. The will directed that a certain sum in money be placed at "interest," and the court regarded that word as some guide to the trustees as an expression of the testator that he did not contemplate any adventure with the fund, with a view to profits as such, and commented upon the fact that when money is put in the purchase of stock, by the very terms of the investment, the principal is not to be returned at all. The court further used this significant language:

"It is not necessary for the decision of this case; and I am not prepared to say that an investment in the bonds of a railroad or other corporation, the payment whereof is secured by a mortgage upon real estate, is not suitable and proper, under any circumstances."

While the court in that case held that, under the terms of the will, the trustees were not justified in making the investments, that case is not controlling in the decision of the construction of the clause now under consideration. In this will the testatrix expresses her intention in such a manner as to make it plain that she did not intend that her trustees should be confined to investments of "the character permitted for the investment of trust funds by the ordinary rules of law."

In Lawton v. Lawton, 35 App. Div. 389, 54 N. Y. Supp. 760, the court, referring to King v. Talbot, says that:

"The language of the testator in that case, after giving certain sums to his children, to be paid to them with all accumulations of interest thereon at their majority and appointing executors, was: Intrusting to their 'discretion' 'the settlement of my affairs and the investment of my estate for the benefit of my heirs'—clearly nothing more than an expression of confidence in his executors that they would, according to law, settle his estate and invest the proceeds thereof for the benefit of the heirs, having no reference whatever to the nature of the securities in which the investments should be made, a provision totally different from that contained in the will at bar."

In the Lawton will the language authorized his executors to hold certain moneys "in trust to and for the use and benefit of such child or

children, and to keep the same invested in such securities as to the said executors shall seem best," and the court held that a reasonable construction of the powers conferred upon the executors by the will gave them the discretion to invest the funds outside of court securities.

It was held in Denike v. Harris, 84 N. Y. 94, that:

"The creator of a trust requiring investment of money may designate how the investment may be made, and what security may be taken, and he may dispense with all security."

The will under consideration names two sons of the testatrix as executors and trustees, and the whole will shows that she reposed great confidence in their judgment and business sagacity. She evidently desired that as large a rate of interest should be earned by the trust fund as consistent with the selection of sound securities.

The court, in Duncklee v. Butler, 30 Misc. Rep. 58, 62 N. Y. Supp. 921, after citing several cases, says:

"It has, however, been always deemed important to obtain any light which may be thrown by the will itself, as to the intention of the testator, upon the character of the investments he desired for his estate. * * * And if the will impliedly allows investments in other than court securities, the executor may so act, and a reference may be had for his guidance to the securities owned by the testator. * * * The testator undoubtedly desired a fair rate of income for the beneficiaries, and well knew that the highest class of court securities could afford but a small yearly return. The language used by his testator ['said executor and trustee may invest and reinvest the trust estate at his own discretion'], considered with his own conduct in the manner of investments, affords a conclusive interpretation as to his intent, and therefore, under·the proper construction of the will, the executor and trustee may retain the safe investments now in his hands, and as a necessary corollary may reinvest, as necessity compels, in similar securities, using always the fair business discretion which the law requires."

Under the authorities, the provisions of this will, as to the character of investments, cannot be regarded as invalid; but I do not think that the manner of the exercise of the discretion given is placed beyond review by the interested parties.

It seems to me that a proper construction of the clause under consideration permits the executors to invest the trust fund in securities other than so-called court securities, or those mentioned in section 111 of the Decedent Estate Law, using such diligence and such prudence in the care and management of the trust funds as prudent men of discretion and intelligence in such matters employ in their own like business concerns. If the executors and trustees in their discretion do not invest the funds in such securities as are mentioned in said section 111, known generally as court securities, in case of the depreciation of the investments their conduct as to good faith, diligence, and prudence may be inquired into on a settlement of their accounts. If, in the investment of the funds, they should take securities which diligent and prudent men, acting in good faith, would not take, they would be held liable for the loss; but if they should act with the good faith, prudence, and diligence which would characterize a good, careful business man under the circumstances in the investment of funds, they would not be held liable, although there might be a loss.

[6] Another clause of the will which is claimed to be invalid, and the construction of which is asked by Mrs. Gordon, is the ninth paragraph, reading:

"Any or all of the trusts or legacies hereinbefore directed to be set apart, may be set apart in the discretion of my said executors, in money or property, belonging to me at the time of my decease, at such valuation as my said executors in their absolute and uncontrolled discretion, may deem advisable."

Neither side has brought to the attention of the court any authorities where a like provision in a will has been construed or adjudicated. This proceeding was brought before the last amendment to section 2624 of the Code took effect. In construing a provision which in general terms is valid, it is practically impossible to give a construction thereof applicable to all the various questions which may arise in the administration of the estate. All contingencies may not be anticipated. Certain acts under a provision, or the manner of the exercise of certain powers under a certain provision, may be legal and proper, and certain other acts, or the manner of the exercise of powers, may be illegal and improper. With reference to certain acts, the question whether they are proper or not may have to be determined by ascertaining the intention of the testator as expressed not only in the particular provision relating to the same, but in other portions of the will. To attempt to discuss all the acts which might be done or not done, or the manner of the exercise of all powers given, would be purely academic and to no definite purpose.

When it is necessary to decide whether some specific act of the executor is authorized by a certain provision of the testamentary paper, when the exact question is before the court, a decision can be made thereon.

I am disposed to hold the ninth paragraph valid, construing the discretion given as a discretion to be exercised in good faith and without fraud or collusion or a palpable abuse of power.

[7] The amended answer alleges that the following eleventh paragraph is illegal and void and asks for a construction thereof:

"Eleventh. I direct that in case any litigation whatever arises in respect to this will or any of its provisions or its probate or concerning the trusts hereby created, or any of them, all the costs, disbursements and allowances awarded by the court to all the parties concerned in such litigation, and also all the costs, disbursements, counsel fees and expenses of every name, nature and description, which may be incurred by the executors of or the trustees under this will in defending or preparing to defend any such legal proceedings or in taking advice with respect to their rights and duties concerning the same, or with respect to the construction of this will or any question growing out thereof, shall be charged against the amount coming under this will or otherwise from my estate to the persons commencing or joining in such legal proceedings against the said executors and trustees and shall be considered as so much money paid to such persons or applied to their use, with like effect, in every respect, as if the same amount of money or its equivalent had been paid, transferred or conveyed directly to them by my said executors and trustees. The statement of the amounts incurred by my said executors or trustees, as aforesaid, shall be accepted as conclusive upon any accounting by them with respect thereto, both as to the reasonableness of any counsel fees paid and as to the correctness of all payments made."

The court, after diligent search, has been unable to find any case in this state in which there is any decision as to the charging upon a contestant of all the costs and disbursements, as specified in this case, rendered necessary by a contest on probate of the will. The attorneys for proponents have informed the court that they have found no case in the state of New York involving the precise question. The attorney for the party answering has cited Matter of Wall, 76 Misc. Rep. 106, 136 N. Y. Supp. 452, in support of the theory that the entire eleventh paragraph is invalid. We regret that at the outset we do not receive great encouragement from the learned surrogate, who in that case, after very ably reviewing the authorities, says:

"Out of this confusion of authority there can come only a balanced negation, an equality of sounds which produce silence. There is a precedent for every inconsistent solution of the question, but prescript for none."

In Matter of Wall the language was:

"In the event of my said son * * * contesting this will, I revoke the trust legacy to him."

There was no gift over of the legacy in case of forfeiture. There was a general disposition of the residue of the estate. The legacy was of personal property. The court followed Hogan v. Curtin, 88 N. Y. 164, 42 Am. Rep. 244, as a precedent, in which case the condition involved was that the legacy should fail in part if the legatee should marry without the consent of designated persons.

Many of the conflicting cases turn upon the question as to whether the gift is of real or personal property, whether there is an implied gift over by the will's containing a general residuary clause, and whether there was probable cause for the making of a contest.

A brief review of some of the cases in this state may be profitable. In Rank v. Camp, 3 Dem. Sur. 278, a legatee applied for a decree directing the payment to her of a sum of money to be reckoned as a part of her legacy, and the executor filed an answer setting forth that the applicant was opposing the admission to probate of the alleged will which contained a clause declaring that, in case any legatee should contest the validity of the instrument, the provision in his favor should cease and fall into the residue. The court said:

"I should certainly not feel justified, in the present state of the law, in holding that the question, whether the contestant has forfeited all claims as legatee under the will, is entirely free from doubt, and must therefore in obedience to section 2718 of the Code * * * dismiss this petition."

In Matter of Barandon, 41 Misc. Rep. 380, 84 N. Y. Supp. 937, the surrogate of New York county held that, though conditions where legacies are defeated by contesting the validity of the will in which they are contained are not favored and are strictly construed, they are valid.

In Bryant v. Thompson, 59 Hun, 549, 14 N. Y. Supp. 28, by a codicil to the will, in case any beneficiary named in the will should "in person or by another contest the probate of the will," the testator re-

voked all provisions therein in favor of such contestant and provided that if such contestant should be his daughter all the property given in trust for her benefit should go to his wife. The daughter was a minor, and when the will was offered for probate the surrogate, of his own motion, appointed a special guardian who contested the probate of the will. The General Term used this language:

"Taken together, as the learned justice at Special Term has decided, they [the provisions of the will] constitute a conditional bequest to the executors, as trustees, determinable in the event that the daughter, in person, or by another, contests the probate of such will. This is not an unlawful provision when contained in a last will and testament. The testator, having the right to say to whom his property shall be bequeathed and devised, had the right also to make it as a condition of any gift that the recipient thereof shall not contest the probate of the will. * * * It follows therefore * * * that the respondent failed to observe the condition upon which the bequest was made to her, and consequently that she cannot now, having been defeated in the probate, receive anything from the estate, unless the provision in question, when aimed at an infant, is to be deemed void as being against public policy."

The court held that as against an infant the condition could not be upheld, and was void as against public policy, because seeking to deprive the courts of the powers and duties imposed on them by law for the protection of infants. The court further said:

"No such restraint upon the independence of officers charged with a duty to their wards can safely be tolerated in last wills. With adults the case is different. They may give away their rights; they may waive the provisions made for them; they are at liberty to enter upon a contest of a will or not, at their pleasure; but with infants the case is otherwise."

In Matter of Stewart (Sur.) 5 N. Y. Supp. 32, the will provided that if any beneficiary should directly or indirectly institute or become an acting party to any proceeding to set aside, interfere with, or make null any provision of the will, his interest in the will should become null. In that will there was no express gift over. The surrogate held that one beneficiary joined in a proceeding to revoke the probate of the will and thereby deprived herself of her legacy in case the will should be sustained. The court discussed the question whether a gift over must necessarily be found in such a condition in express words, and whether we may not look for the gift over by direct implication and necessary inference from the words used. The court finally states the conclusion reached as follows:

"The rule in England cannot, it seems to me, be regarded as settled yet as to conditions against disputing a will. The doctrine of many cases there may seem fairly to establish the rule that the condition of not disputing a will by a legatee is to be regarded as in terrorem only unless there be a gift over, but such does not seem to me to be the rule in this country. Any reason for the distinction made between bequests and devises I am unable to adopt as substantial, nor have I been able to find any American authorities approving the English rule, if, indeed, we may say there is a rule on the subject in that country. American authorities the other way can be multiplied, and they are to be found in the decisions of the courts of last resort in several states. The rule in Canada seems to be settled in favor of upholding the legality of such a condition annexed to a bequest. A standard authority in this country enlightens me as to the true rule. I quote from Judge Redfield on the Law of Wills, 3d Ed. p. 679, 2d Ed. p. 298, and this quotation contains what I com-

mit myself to as the rule in America upon this subject. He says: 'The rule of the English law as to conditions against disputing the will annexed to some bequests, seems to be in a most absurd state of confusion. It is held that such a condition is void as to personalty unless the legacy be given over in the event of failure to perform the condition, but that such a condition is entirely valid as to real estate, whether there be any gift over or not; and it is agreed that there is no substantial ground for any distinction in this respect between real and personal estate. Hence we assumed that in this country any such condition which is reasonable, as one against disputing one's will surely is—as nothing can be more in conformity to good policy than to prevent litigation—will be held binding and valid.' "

In the cases above cited the question involved was whether the legacy or devise was forfeited by making contest.

In this eleventh paragraph a question arises which is more or less kindred, but it differs from the provisions declaring a definite bequest void in case of contest. The testatrix, desiring to carry out the object provided for, could not consistently provide that the amount of all the costs and expenses, rendered necessary by the contestant, should go to some one else. The effect of the provision is to save the entire estate, or rather the amount of the estate subject to distribution, from depletion by reason of the costs incurred on account of contest. It does not seems necessary in the construction of this provision to decide whether a gift over is necessary to the validity of a condition against contest in case of a bequest of personal property. The character and terms of the provision, against litigation in this case, differ from the character of provisions of wills declaring legacies to contesting legatees void.

The provisions of the eleventh paragraph are somewhat involved in verbiage, but two questions which arise in the beginning may be briefly stated as:

First. Whether so much of said paragraph as provides that the costs, expenses, and disbursements attendant upon contesting the probate, or setting aside the probate of the will, shall be charged against the amount coming to the contestant in case the will is sustained, is valid.

Second. Whether so much of the eleventh paragraph as directs that in case any litigation arises in respect to the construction of the will, or any question growing out thereof, all the costs, expenses, and disbursements attendant thereon shall be charged against the amount coming under the will to the persons commencing or joining in such legal proceedings, is valid.

It is certain that a contest of the will, filing objections to its probate, or an attempt to have the probate of the will declared invalid, followed by the production and swearing of witnesses on the part of the objecting party, would be comprehended under the word "litigation." It is also equally certain that a provision or condition against the contest or setting aside of the probate of a will rests upon one basis, while provisions against proceedings for the construction of a will or the protection of the rights of a legatee under the will must be considered in the light of other principles.

As before stated, the precise question involved here in relation to charging over the expenses of contest upon the contesting legatee has not been decided in this state, so far as the reported decisions disclose; nor do I find any decision of the question in any other state except New Jersey.

In the case of Hoit v. Hoit, 42 N. J. Eq. 388, 7 Atl. 856, 59 Am. Rep. 43, decided in 1886, the court gave a very exhaustive consideration to the following provision of the will:

"If any or either of my children shall enter a caveat against this my will, he or they shall pay all the expenses of both sides."

One of the testator's children filed a caveat that is opposed to the probate of the will, and the court of last resort held that the executrix was entitled to deduct the total expenses, amounting to a large sum, from the contestant's share. The court, after discussing the various distinctions which we have hereinbefore alluded to, as to gifts of real and personal estate, and whether there is a gift over, etc., laid down the following statement of the law:

"Upon another and a broader principle of equity, the appellee should not be allowed to defeat the intention of the testator that there should be no litigation over his will at the expense of the estate, or, in this case, at the expense of his widow, the legatee, or the portion of his property charged with the payment of debts and expenses. This is not strictly the doctrine of election between repugnant gifts, but a rule of equitable construction that a person cannot accept and reject the same instrument, and that there is an implied condition that he who accepts a benefit under it shall adopt the whole by conforming to all its provisions. This is the rule on which the doctrine of election is founded. Hyde v. Baldwin, 17 Pick. [Mass.] 303; Gretton v. Haward, 1 Swans. 409; Dillon v. Parker, 1 Swans. 359, 394; Streatfield v. Streatfield, Cas. T. Talb. 183; 1 Lead. Cas. in Eq. (W. & T.) 273; 2 Story, Eq. Juris. 1077.

"This devisee has opposed the intention of the testator by disputing his will and casting the burden of the expense of litigation on the estate, thus holding the full amount of his legacy under the will, without any diminution or compensation for his breach of this condition. It is not a case of forfeiture by the terms of the will, but one for compensation out of the fund received by him from the testator, which must be met, unless there be some exception from the above-cited general equitable rule, by which he may keep what he has received and defy the purpose of the giver. This is said to be the effect of section 177 of the Orphans' Court Act, by which that court made and has ordered that the costs and expenses of contesting the probate of the will shall be paid out of the estate of the decedent, and that the provision of the will, imposing the payment of the costs and the expenses of the litigation on the contestant, is void because against this statute and the declared policy of the law. But conditions in wills trenching on the liberty of the law are described to be such as are in general restraint of marriage, trade, agriculture, and the like, in which the state has an interest, and not as to who shall take under a will, which can only affect those who are directly concerned. There is no express prohibition of the disposition of property by will in such terms as the testator shall see fit to impose, nor can such a purpose be inferred from the terms of this act."

The above case was followed in a later case, decided in the year 1910, being Kayhart v. Whitehead, 77 N. J. Eq. 12, 76 Atl. 241, affirmed in the Court of Errors and Appeals without opinion in 78 N.

J. Eq. 580, 81 Atl. 1133. In the latter case, the will contained the following provision:

"If any of my devisees shall file a caveat against this my last will and testament, or in any other manner, aid, assist, or attempt to prevent the proof of my said will, then I do order that all the expenses of probating my said will be taken by my executor from the share of such one, or ones, as shall file such caveat, or attempt to prevent the proof of this my will."

In the Kayhart Case all the gifts involved were personal property, and the word "devisees" in the will was held to mean "legatees." The court said:

"The second objection, that the provision imposing penalty or condition is void or ineffective, has been decided adversely to defendants' contention in Hoit v. Hoit. * * * In that case a provision * * * was held valid * * * on the broader equitable ground that a person accepting a benefit under the will must adopt the will as a whole and conform to all its provisions. And the rule was enforced in this case, although it appeared that in the opinion of the probate court the devisee had reasonable cause for contest, and all expenses of both sides were, as in the present case, ordered to be paid by the executor out of the estate. Repayment by the devisee of these expenses was decreed upon the bill. * * * The legacies to these three defendants will therefore be declared to be held subject to the repayment of the expenses paid on the probate by the direction of the probate court."

It seems to me that the two cases last above mentioned afford a safe guide in the decision of the legality of the provisions in the eleventh paragraph, relating to the charging over of the costs and expenses of contest or an attempt to set aside the probate of the will, and I accordingly hold that such part of paragraph 11 is valid as provides that all costs, disbursements, and allowances awarded by the court to all parties concerned in litigation in relation to probate or sustaining of the probate of the will made necessary by contest, or an attempt to set the same aside or have the probate of the will declared invalid, and also all costs, disbursements, counsel fees, and expenses of every kind which may be incurred by the executors in defending the probate or preparing to defend the probate, or in taking advice with respect to their rights and duties concerning the same, shall be charged against the amount coming under the will, or otherwise from said estate, to the persons commencing or joining in such legal proceedings against the executors and trustees (thereby meaning legal proceedings against the probate or the validity of the probate of the will), and shall be considered as so much money paid to such persons, or applied to their use with like effect in every respect, as if the same amount of money or its equivalent had been paid, transferred, or conveyed directly to them by the executors and trustees.

We next come to a decision of the question as to the validity of so much of the eleventh paragraph as provides that costs and expenses incurred "with respect to the construction of this will or any question growing out thereof" shall be charged against any person commencing or joining in such legal proceedings.

A proceeding for a construction of a will in its essence may serve valuable purposes, not only for one or more legatees, but for the exec-

utors themselves. An adjudication as to the construction or validity of certain provisions is in aid of carrying out the intention of the testator.

Suppose a testator, by his will, bequeaths or devises to a legatee, or devisee, certain gifts and surrounds them with provisions which he, at the time, considers plain and certain, and relying upon his belief that his will plainly means what it says, and says what it means, so that there can be no mistake about it, and then he inserts in the will a clause that, if any legatee brings or takes part in an action or proceeding for construction, he shall forfeit his legacy or have the expenses charged against his legacy. After his death, when his executors come to carry out the provisions of his will, the terms thereof may be capable of different meaning and construction. Is it equitable, is it according to the policy of the law that one or more legatees should not file or utter an objection against some particular construction of the will, which may be against their interests, except under a penalty of forfeiture? The objecting legatee may be insisting upon the construction which was according to the intention of the testator as it lay in the mind of the testator when he made his will.

The Court of Appeals, in 1894, in Black v. Herring, 79 Md. 146, 28 Atl. 1063, passed upon a similar provision in a will which provided:

"I further will that in case any person or persons to whom any legacy is given * * * shall commence any suit or proceeding, or file any caveat against this my will and codicil, or by any means sue and disturb or cause to be sued or disturbed my executor or trustees herein named, or any person to whom anything is by me given by my said will or codicil from recovering, possessing and enjoying what is by me so given in such manner as is therein mentioned, then my will is that all and every legacy and legacies herein by me given to any such person who shall sue and disturb as aforesaid, shall cease and determine and be utterly void and that then I do give and bequeath all and every (such) legacies * * * to my granddaughters."

A suit was begun by a son against his two sisters as legatees and trustees, asking for a construction of the will. The court stated:

"There yet remains * * * the contention of the appellees that by the provisions of the second clause * * * [quoted above], the appellant, by his conduct in filing this bill, has placed himself in conflict with the provisions of said clause, and of the original will, and forfeited all claim to participation in the benefactions of said testamentary papers. It is a mistake to assume that the appellant in filing this bill, by which he seeks only the true construction of the said will and codicil thereto, and the enforcement of his rights thereunder, is seeking to thwart the designs of the testatrix or in any manner to interfere with the due execution of her wishes as expressed in her testamentary papers. It would be an anomaly in the law, and a very unjust restriction, if such a contention could be upheld."

In Woodward v. James, 44 Hun, 95, the will gives to his widow certain property and income during life and to testator's legal heirs the reversion and ownership of all his property after the death of his wife, and provides that:

"In the event of any of my legal heirs making any attempt, directly or indirectly, in any manner or form, to interfere with or restrain, in any manner, my beloved wife from the full enjoyment, use, management, direction and

disposition of the property and income of my estate as herein devised then and in that event, such one of my legal heirs as shall do or perform or aid or abet such an act, or cause the same to be done, shall be forever debarred from any part, parcel, interest or ownership, or inheritance  *  *  *  and the share that would otherwise have gone to him or her shall be divided among my remaining heirs according to law."

On the question whether the plaintiff, by bringing the action for construction of the will and for partition of the property, debarred himself from sharing in the property, the court said:

"The action  *  *  *  was not, in its scope and purpose, intended to defeat the known and established intention of the testator, but to obtain an adjudication as to what the intention was. This is not an interference with the legal rights of the executrix and trustee."

My conclusion is that so much of the eleventh paragraph as directs that in case any litigation arises with respect to the construction of the will, or any question growing out thereof, all the costs, expenses, and disbursements attendant thereon incurred by the executors or trustees shall be charged against the amount coming under the will to the persons commencing or joining in such legal proceedings, is ineffective and void.

We must next consider the last sentence in the eleventh paragraph, reading:

"The statement of the amount incurred by my said executors or trustees, as aforesaid, shall be accepted as conclusive upon any accounting by them with respect thereto, both as to the reasonableness of any counsel fees paid and as to the correctness of all payments made."

Wherever a discretion may be reasonably lodged in an executor for the purpose of simplifying the administration of the estate and saving expense to the legatees, and at the same time preserving their just rights, such a provision should be upheld, however the sentence under consideration is along a different line.

There are provisions which give executors and trustees the right of a liberal exercise of discretion and which are upheld and the executor not interfered with so long as he uses his powers honestly and in good faith; but in such cases the discretionary powers are usually incident to the ordinary duties of executors and trustees, or given where the personal judgment of the particular person selected by the testator may be best relied upon in the exigencies of the case. The provisions of this sentence cannot harmonize with the above principles and circumstances. If the sentence means anything, it means that the statement of the amounts incurred is "conclusive," and that neither the "reasonableness" of the fees paid nor the "correctness" of payments may be inquired into or attacked in any way; when the amount is written in the accounts, it is conclusive.

If a testator should clothe his executor or trustee with discretion as to the amount to be applied to the support or education of a beneficiary, it would be one thing; but, if he should say that whatever statement the executor should insert in his accounts as to the amount

paid should be conclusive as to the correctness thereof, it would be quite another thing.

It is not equitable, reasonable, or just that certain expenses, counsel fees, and other disbursements in the ordinary conduct of an estate should be subject to objection and review, but that the amount in which a contesting legatee should be penalized—the amount, correctness, and reasonableness of all charges and payments—should be left to the will of an executor whose judgment in the infirmity of average human nature might not work along calm and dispassionate lines, after the heat of a long and spirited contest, in which he might be also personally interested.

In a small estate, where a legatee taking a small legacy might contest, and a large amount should be paid for expenses, etc., in excess of the amount of the legacy, creditors might be wronged by the depletion of the estate, or even the state might be wronged out of transfer taxes by the enhancement of expenses and the reduction of the amount distributable, unless perhaps such a sentence in the will should be construed in that case as meaning that the statement of amount and the reasonableness of charges should be conclusive only as against such contesting legatee. But such a course would accord review to one party but deny it to another, which offends our sense of justice.

The sentence does not accord with the controlling intention expressed elsewhere in the general provisions of the will, and particularly in the specific declaration in which the testatrix says, "It is my desire to make a fair and just distribution of my estate among my children."

"It is the policy of the law to limit irresponsible power as much as possible, and to subject the conduct of every person having the rights and interests of others in his power, to the regulations and control of the rules of law." Perry, Trusts & Trustees (6th Ed.) § 511a.

The sentence above quoted in the eleventh paragraph, beginning with the words, "the statement," and ending with "payments made," is ineffective and invalid.

A decree will be prepared and submitted according to the foregoing opinion.

Decreed accordingly.