IN MATTER OF ESTATE OF JAMES H. CHAMBERS, Deceased: ARTHUR T. CHAMBERS, MAE E. CHAMBERS, LESLIE T. CHAMBERS and ETHEL S. INGELS v. JOHN RALPH CHAMBERS, Appellant.—18 S. W. (2d) 30.

Court en Banc, May 25, 1929.

*Charles G. Revelle, George O. Durham, J. Revelle Burcham* and *Emil E. Brill* for appellant.

*Watts & Gentry* for respondents.

LINDSAY, C.—Appellant, John Ralph Chambers, is a son of James H. Chambers, deceased, by the latter's first marriage. The respondents are the widow and children of the deceased by his second marriage.

This proceeding originated in the Probate Court of the City of St. Louis, in the final distribution of the estate, under the will of the deceased. The probate court upheld the validity of a "no-contest" clause contained in the will.

Appellant, said John Ralph Chambers, had contested the will of his father, and the probate court, upon the application of respondents, adjudged that he had thereby forfeited the legacy given by the will, and ordered the share given him to be divided equally among the respondents, the other residuary legatees. One-fifth of the residue of the estate was devised to a trustee for the sole use of John Ralph Chambers during his lifetime, and at his death, to go to the other beneficiaries under the will.

The fifth clause of the will is as follows:

"Fifth. If any devisee, legatee or beneficiary under this, my will, shall contest the validity or object to the probate of this instrument or attempt to vacate the same or to alter or change any of the provisions hereof such person shall be thereby deprived of all beneficial interest thereunder and of any share in my estate, and the share of such person shall become a part of my residuary estate, and such person shall be excluded from taking any part of such residuary estate, and the same shall be divided among the other persons entitled to take such residuary estate."

The issues and the result of the suit to contest the will of James H. Chambers, may be seen in Chambers v. Chambers, 297 Mo. 512, 249 S. W. 415. In the instant proceeding, the circuit court affirmed the judgment and order of distribution made by the probate court, and this appeal was taken. Jurisdiction of the appeal is shown by the record, in that appellant's share of accrued income, had he participated in the distribution, was in excess of $20,000.

Counsel for appellant contend that the foregoing clause of the will is invalid, in that it is violative of public policy, and violative of certain provisions of the Constitution of this State and of the Constitution of the United States; and farther, that the suit to contest the will was prosecuted in good faith, and based upon probable cause, and that the contestant, this appellant, was justified in instituting and prosecuting that suit; and, on that account, appellant is excepted from the forfeiture provision of the will.

The question presented is one of first impression in the appellate courts of this State. However, the validity of a provision of this character has been before the appellate courts of many of the states, and not infrequently has been considered by the courts of England;

and decisions are numerous not only on the question of whether such a provision is valid, but also, whether an exception to the provision for forfeiture shall be made upon the ground that the contest was one instituted upon probable cause and in good faith. The conflicting decisions reached, and the contradictory grounds upon which they proceed, and the importance and interesting character of the subject, explain, perhaps, the frequency with which such cases have been the subject of annotation. In many of the earlier decisions and especially in England, the allowance of an exception to the operation of the condition of forfeiture turned upon the question whether the gift was of land or personal property, and if the latter upon the fact that there was in the will no gift over of the legacy bequeathed to the contestant. In such cases where there was no gift over, the provision for forfeiture was held to be one merely *in terrorem.* Recognition of this rule and reference thereto was made by MARSHALL, C. J., in Pray v. Belt, 26 U. S. (1 Peters) 1. c. 670: "Clauses of this description have always received such judicial construction, as would comport with the reasonable intention of the testator. Even when the forfeiture of the legacy has been declared to be the penalty of not conforming to the injunction of the will, courts have considered it, if the legacy be not given over, rather as an effort to effect a desired object by intimidation, than as concluding the rights of the parties." This was a *dictum,* in a case in which the will contained a provision that disputes as to the intention of the testator should be conclusively settled by the executors without resort to law; but no penalty was imposed for breach of the condition. In the case at bar the exception is not claimed upon the distinction immediately under consideration, because there is a gift over of the legacy bequeathed to John Ralph Chambers.

The issues as framed by the respective counsel run as follows: Counsel for appellant insist that the forfeiture provision is invalid, but, alternatively, further insist, that although a provision may be valid in a general sense, yet, that in reason and authority, and upon grounds of public policy, an exception is to be made where reasonable grounds of contest appear; and, that under the evidence appellant is within that exception. Counsel for respondents on the other hand contend that in reason and under the weight of authority the provision is valid, and admits of no exception; but, that even if the asserted exception is one which may be considered, the evidence fails to show that appellant is within such exception.

A reading of the decisions and the reasons advanced suggests the thought that a judicial opinion can be constructed on either side of the controversy, well supported by authority, and apparently supported by reason. Counsel for appellant insist that it is contrary

to the public policy of any state to deny access to the courts for redress or remedy for any wrong, or for the protection of any right, and cite Sections 10 and 30 of Article II, Section 1 of Article VI, of the State Constitution, and Section 1 of Article XIV of the Amendments to the Constitution of the United States; also the Statute of Descents and Distributions, and the Statute of Wills. By Section 1 of Article VI of the State Constitution the judicial power is vested in certain courts. Section 30 of Article II is the due-process clause of the State Constitution, and Section 1 of Article XIV of the Federal Constitution is the section which guarantees due process of law and the equal protection of the laws. Section 10 of Article II of our Constitution provides: ''The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay.''

It seems clear that the provisions of the due-process clause in the State Constitution and in the Federal Constitution, as well, are inhibitions upon the power of the State, and not upon freedom of action of private persons in respect to disposition of their own property. In the case at bar we are concerned with the right of an individual to deal with his own property.

Under the contentions made by counsel above indicated, that the upholding of a clause of forfeiture for contest of a will is violative of public policy as expressed in the State and Federal Constitutions, two lines of cases are cited. One consists of cases wherein a disposition of property by a will was made; the other, cases wherein a legislative act of a state was under consideration. In the latter class are Home Insurance Company v. Morse, 20 Wall. 445; Terral v. Burke Construction Co., 257 U. S. 529; White v. Delano, 270 Mo. 16; Cement Co. v. Gas Co., 255 Mo. 1. In the Federal cases cited the question at issue was the constitutionality of a state law providing for revocation by the State of the license of a foreign corporation which should remove a case to a Federal court. It was held that the State could not exact a waiver, or enforce a waiver if one was given, of the exercise of the vested constitutional right of such corporation to resort to the Federal courts. The distinction between that question and the one here in issue seems clear. During the life of his father the appellant had no vested right in his father's property. His father had the right to give, or to withhold; and the right to make a will giving his son no more than a nominal sum, or if ''named'' in the will, nothing at all; or, to bequeath property to him under any condition he saw fit to impose, provided the condition was not one contrary to good morals, or public policy. While it is true that if the appellant's father had made no will, the appellant would share in his property in accordance with

the Statute of Descents and Distributions; yet, since he did make a will, whatever was thereby given to appellant, was the result of individual choice, or an act of grace on the part of the testator, and not in performance of any legal obligation arising upon any vested right of the appellant.

The case of White v. Delano, supra, arose under the provisions of the Maximum Freight Rate Act of 1905. It was ruled that the penalties proscribed by the act for the exaction of charges in excess of those provided by the act, were suspended pending the proceeding to enjoin the enforcement of the act upon the ground that it was confiscatory; and, that the statute imposing the penalty for overcharges, if such penalty should be enforced for overcharges made pending such suit, impaired the constitutional right of the carriers to resort to the courts, for "certain remedy for every injury to persons, property or character." [Sec. 10, Art. 2, Mo. Const.] There, it was the State imposing a penalty, taking the property of the carrier companies. Here, it is the individual, disposing of his own property and making a bequest subject to the condition, that the legatee shall not do a certain thing, and, if he do that thing, the bequest shall go to another. We have not found that the cases cited by counsel dealing with a testamentary disposition of the property, except one, make mention of any constitutional provision as determinative of the question of public policy.

In Mallet v. Smith (So. Car.), 60 Am. Dec. 107, there was a will which provided that if any of the testator's legatees under the will complained, or expressed any dissatisfaction with any disposition of the estate made by the will, the executors were directed and empowered, in their discretion, to revoke any and all legacies of the complaining legatees. It was held that the discretionary power given could not be exercised by the acting executor, and the decision seems farther to have proceeded upon the theory that under the will there was no gift over, and it was said that the doctrine of validity of such a condition where there was a devise over, is too firmly established to be overruled, except upon grave consideration in some case where the point was necessarily involved in the decision, and such was not the fact in the case under consideration. Two of the Judges expressed the view that such a provision "is void, whether there be a devise over or not, as trenching on the 'liberty of the law.' [Shep. Touch. 132.]" The decision of the court in reality was a decision that the discretionary power given jointly to the executors did not survive after the death of any of them, and could not be exercised by the acting executor, though the other two appointed renounced the office and failed to qualify; and farther, that the power given was not pertinent to the office of executor. Rouse v. Branch, 91 So. Car. 111, 39 L. N. S. 1160, is cited.

It was there held that a beneficiary under the will did not forfeit his share by attempting to show, upon probable cause, that the will was a forgery, and it was ruled that public policy forbade that by such a clause in the will he should be coerced into partaking of the fruit of what he believed to be a crime. The ruling was followed in Sherwood v. McLaurin, 103 So. Car. 370.

South Norwalk Trust Company v. St. John, 92 Conn. 168, Ann. Cas. 1918E. 1090, is cited. In that case it is held that provision forfeiting a legacy in case of contest of the will by the legatee, was only valid where the contest was not made in good faith and upon probable cause and reasonable justification. This holding was upon the ground that where a contest had been made in good faith, and upon probable cause and reasonable justification, the legatee should not forfeit his legacy, because he had been engaged in helping the court to ascertain whether the instrument purporting to be the will of the testator was such; and, on the further ground, that to interpret a forfeiture clause as barring all contest upon penalty of forfeiture, whether made on probable cause or not, would furnish those who would profit by a will procured by undue inflluence, or made by one lacking testamentary capacity, with a helpful cover for their wrongful designs.

Wright v. Cummins, 196 Pac. (Kan.) 247, 14 A. L. R. 604, is cited. In that case there was a claim for money presented, and there is citation of authorities on both sides of the question whether the forfeiture clause of the will was valid. It was said in the opinion: "Public policy should be as much concerned in upholding the right of a citizen to have his claim determined by law as it is to prevent contests of wills." However, it was held in that case that the claim made by the defendant against the estate of the testator, was not a contest of the will, nor within the conditions prescribing a forfeiture. The opinion announces the rule, generally accepted, that claims of forfeiture for contest of a will are not looked upon with favor, and will not be extended in their operation beyond the plain term used by the testator. Counsel for appellants cite several decisions rendered in New York by the inferior courts, under their point that the no-contest clause violates the provisions of State and Federal constitutions. These cases also discuss the question on the general ground of public policy.

In re Wall, 136 N. Y. Supp. 452, 76 Misc. Rep. 106, is cited. In that case there was a bequest in trust of a fund, the income of which was to be paid to the son of the testator during his natural life, and on his death the principal sum was to be paid to the son's next of kin. By another paragraph the testator merely revoked the trust legacy to the named son in the event he should contest the will. On those

premises, the opinion tersely states the many, **varied and** contradictory rulings made by the courts, in 76 Misc. Rep. at page 107:

"The condition that the gift shall fail if the legatee shall dispute the will is the subject of a special aversion by which many courts have been led into processes of reasoning which by other courts have been condemned.

"It has been said that the conditions declaring legacies invalid if the legatee shall contest the will are void in any event as trenching upon the liberty of the law.

"This proposition is in turn rejected by cases which hold that the condition as to a gift of personalty is *in terrorem* and invalid unless there be a gift over in case of forfeiture.

"It seems established that in England and in this State the rule differs in respect to a devise of land, and that conditions, invalid as to a gift of personalty for lack of a gift over, are effectual when attached to a gift of real estate, without an alternate gift.

"Some courts, which hold the condition void in the absence of an alternate gift, have insisted that disposition of the residue cannot be regarded as a gift over to take effect upon the failure of the legacy.

"There are decisions that the condition, though valid, is not broken by the mere maintenance of an action or proceeding against the will, if the issue is not brought to trial.

"Again, the condition has been avoided upon a finding that the effort to set aside the will, though persistent, was not frivolous and insincere and was prosecuted with probable cause.

"Some decisions intimate that the test of probable cause is available only where the condition is coupled with a gift over, while others say that, with or without an alternate gift, there may be inquiry as to the sincerity of the dispute.

"It is even said by a text-writer, that 'this question of *in terrorem* must be left largely to the discretion of the court and that it is impossible to formulate any precise rule that will apply to all cases.'

"Against these views, all united in instinct but diverging in method, is the opinion that the plain intent of the testator must be looked for, and, if found, must be effectuated; that a legacy or other provision which is made to depend upon an event indicated must prevail or fail according to the prescribed event simply for the reason that the testator has so ordained, and that the condition, therefore, must be effectuated, whether or not it be coupled with a gift over.

"Each of the propositions stated supra has found both approval and rejection." Then follows citation of many authorities; after which, it was said: "Out of this confusion of authority there can come only a balanced negation, an equality of sounds which produce si-

lence. There is a precedent for every inconsistent solution of the question, but prescript for none."

In that case the decision that there was no forfeiture was put upon the ground that the provision was merely *in terrorem*, there being no gift over under the New York rule.

In another case cited, In re Kathan's Will, 141 N. Y. Supp. 705, there is a lengthy discussion of public policy and the general question of the validity of a no-contest clause in a will, much of which, it was said, was "outside of the precise point for adjudication" in the case. Another New York case cited is In re Vom Saal's Will, 145 N. Y. Supp. 307, 82 Misc. Rep. 531. There, the provision was that the expense incurred by the executors in any litigation arising with reference to a construction of the will, should be borne by the persons joining in such a proceeding, and be charged against the amounts given them by the will, and also, that the statements of the executors of the amounts of expense incurred should be accepted as conclusive, both as to reasonableness and amount paid. This provision was held invalid.

Re Will of Keenan, 205 N. W. (Wis.) 1001, 42 A. L. R. 836-847, is cited. The opinion in that case is the only one among cases cited by counsel under this head which makes an express reference to a constitutional provision—that provision of the Constitution of Wisconsin which is the equivalent of Section 10 of Article II of our Constitution. In that case it was stipulated between the parties that the contest of the will was upon probable cause and was prosecuted in good faith. The whole question then before the court was whether the clause of the will was effective against the legatee who contested the will, concededly in good faith, and upon probable cause. There is a review in the opinion of a great number of the principal cases involving the question of the validity of a no-contest clause.

The Wisconsin court, after quoting the constitutional provision of that state similar to Section 10 of Article II of our Constitution, said: "This is a basic and valuable guaranty that the courts of the state should be open to all persons who in good faith and upon probable cause believe they have suffered wrongs. Is it not against public policy to permit one person to deprive another from asserting his rights in court? And especially so before it is ascertained that the prohibition against contest is in fact that of the testator, and not that of one exercising undue influence over him, or that he was mentally incompetent to make it." As illustrative of the jealousy with which the right to resort to the courts is guarded, reference was made to the decisions in Terral v. Construction Company, and Home Insurance Company v. Morse, heretofore mentioned. The court also

referred to the rule in Wisconsin that the probate of a will is a proceeding *in rem*, and involved a consideration of public welfare; and the view was taken, that a sound public policy dictated that the truth of a disputable claim shall be ascertained as the law provides; that since courts are instituted to administer justice in the state, there should be no penalty attached to the performance of that function, and inquiry should not be prevented by penalties where there is probable cause to raise the question of undue influence and incompetency on the part of the testator. Answering the argument that by such an interpretation of the will the court added to the condition therein the words, "without probable cause," the court said: "We are not interpolating such words into the will. We simply say that when the conditions of any will applied to the concrete facts of the case are against public policy, they are void. If, when they are so applied they are not against public policy, they are valid. Nothing is added to, or taken from the letter of the will."

Other courts have taken the view that since the testator made no exception, the court could not add such a condition or exception. The ruling by the Wisconsin court was limited strictly to the case in hand, and expression of opinion was withheld as to the proper ruling in a case where the contest was not made in good faith, and upon probable cause.

Citation is made to Fifield v. Van Wyck, 94 Va. 557. The provision there was to the effect that any legatee who should attempt to set aside the will or any part of it, or cause litigation, should forfeit his legacy, and it should revert to the estate. In that case the contesting legatees had accepted their legacies, and they contested merely the validity of the residuary clause of the will. The residuary clause gave the residue of the estate to trustees for the benefit of "the new Jerusalem church (Swedenborgen) as they deem best." This clause was held to be void, as too vague and indefinite. It was held that the forfeiture clause in the will was one merely *in terrorem*, there being no gift over of the legacy. The provision that the legacy of the contesting legatee should revert to the estate was held to be not a gift over. It was further held that a legatee who was also an heir of the testator by accepting payment of the legacy, was not estopped from attacking the validity of the residuary clause, since the provisions of the will were not such as to require an election on his part, nor to amount to a condition annexed to his legacy.

There are a number of cases which hold, without qualification, that the forfeiture clause for contesting a will is not against public policy and is valid. This was held in Cooke v. Turner, 15 M. &

W. 727, 153 English Reprint 1044. It was there said that in such a case, the state has no interest whatever, apart from the interest of the parties themselves; that there is no duty on the part of an heir, whether of perfect or imperfect obligation, to contest his ancestor's sanity; that it matters not to the state whether the land is enjoyed by the heir or devisee, and therefore that the law leaves the parties to make just what construction and what arrangements they may think expedient, as to the raising, or not raising of questions of law or fact among one another, the sole result of which is, to give the enjoyment of the property to one claimant rather than to another. There are other English cases which recognize the exception based on existence of probable cause.

In Donegan v. Wade, 70 Ala. 501, it was held that such a provision was valid; that the evident purpose of it was to prevent useless litigation and the squandering of the estate, and the testator could adopt such conditions to his legacy as he saw fit.

In Bradford v. Bradford, 19 Ohio St. 546, such a provision was held to be valid. The decision followed that in Cooke v. Turner, supra, and it was held that it was the duty of the courts to carry out the intention of the testator unless that intention be contrary to the policy of the law; and that no consideration of public policy required that an heir should contest the doubtful questions of fact or law upon which the validity of a devise or bequest may depend.

In Hoit v. Hoit, 42 N. J. Eq. 388, the provision in the will was that anyone contesting the will should pay the expenses of both sides to the contest. This was held to be a valid provision.

In California, Re Hite, 155 Cal. 436, 21 L. R. A. (N. S.) 953, it was held that such a provision was not void as against public policy. Later, Re Miller, 156 Cal. 119, 23 L. R. A. (N. S.) 868, the rule in the Hite case was followed. The court said that it knew of no principle which authorized it to declare an exception when no such exception was stated in the contest provision contained in the will. The same rule was enforced in Re Garcelon, 104 Cal. 570.

In Moran v. Moran, 144 Iowa, 451, 30 L. R. A. (N. S.) 898, a forfeiture provision was sustained. In that case the legatee asserted independent title to property embraced in the will. The court said the donee was under no compulsion to accept the gift, but is free to elect; that the question he has to decide is the ordinary one which arises in nearly every business transaction—whether the thing offered him is worth the price; that the owner of property may give or refrain from giving; that he may attach to his offer such conditions as his reason, caprice or malice may dictate, but that he is dealing with his own, and the donee who claims the benefit of the gift must take it, if at all, upon the terms offered. The court held

this to be true whatsoever might be the grounds of contest of the will.

In Rogers v. Law, 66 U. S. 253, the will construed forbade legatees from claiming anything under a certain deed designated in the will, under penalty of forfeiting their legacies. Without much discussion, the court held the condition was lawful, and one which the testator had the right to annex in the disposition of his own property. It was said l. c. 261: "The legatees are not bound to accept the bequest, but, if accepted, it must be subject to the disability annexed; it must be taken *cum onere*, or not at all."

In Smithsonian Institution v. Meech, 169 U. S. 398, the testator, by his will, disposed of property standing in the name of his wife, and required his legatees to "acquiesce" in such disposition, under penalty of forfeiture of their legacies. The legatees contested the validity of the disposition of the property, on the ground that it was owned by the testator's wife. It was held that they forfeited their legacies. The forfeiture provision was aimed at this dispute. Acquiescence was a material ingredient in the legacies to those who contested. The forfeiture was held sustainable on that ground, and on the ground that the legatees were put to their election and must abide the result.

The exception based on probable cause is recognized in many cases: In South Norwalk Trust Company v. St. John, 92 Conn. 168 (already mentioned); Moorman v. Louisville Trust Company, 181 Ky. 30; Jackson v. Westerfield, 61 Howard's Practice 399; In re Kathan, supra; In re Kirkholder, 157 N. Y. Supp. 37; Whitehurst v. Gotwalt, 189 N. C. 577; Friend's Estate, 209 Pa. 442, 68 L. R. A. 447; the South Carolina cases heretofore mentioned (Rouse v. Branch, supra; Sherwood v. McLaurin, supra); Tate v. Camp, 147 Tenn. 137, 26 A. L. R. 755; also the Wisconsin case, In re Keenan, heretofore mentioned; also, in Dutterer v. Logan (W. Va.), 137 S. E. 1, 52 A. L. R. 83. In the last-named case the court expressed the opinion that the great weight of authority is against the strict enforcement of forfeiture contained in a devise or bequest, and that where there is *probabilis causa litigandi*, forfeiture will not be enforced, and certainly not where there was no devise or bequest over. There was no gift over in that case. The West Virginia court said: "The exception to the general rule applied here is based on the theory that the testator, by omitting all devises and bequests over, or other provisions excluding the right to contest his will for good cause, did not intend to visit upon his children any such grave consequences. This construction leaves the maxim to apply to vexatious and unfounded litigation, and so construed the forfeiture clause will not wholly perish." It was held that there was probable cause for the contest.

In Tate v. Camp, supra, 147 Tenn. 137, 26 A. L. R. 755, it was held that a forfeiture provision in a will is not void as against public policy, but it was also held that an exception to the rule sustaining a forfeiture, should be made by the court, where the contest was prosecuted in good faith, and upon probable cause. Among the authorities referred to for holding that the forfeiture provision is not void as against public policy, the court cited the earlier Tennessee case of Thompson v. Gaut, 14 Lea (82 Tenn.) 310. In the Thompson case the question was raised whether the forfeiture clause was violative of the State Constitution. The court, without discussing the question, held that such a provision was not violative of any constitutional provision. It may be observed here that Section 17 of the Declaration of Rights in the Constitution of Tennessee is the equivalent of Section 10 of Article II of the Missouri Constitution. The original was Magna Carta (XL): "Nulli vendemus, nulli negabimus, aut differimus, rectum aut justiciam"—"To no one will we sell, to no one will we deny or delay right or justice." The like declaration is found in the constitutions of other states than ours. We mention a few such states wherein cases involving this question have been decided. In Alabama the provision is Section 14 of the Declaration of Rights; Kansas, Section 18; North Carolina, Section 35; but, in none of these cases did the court, in passing upon the validity of such a testamentary clause, refer to the constitutional provision mentioned, as controlling the decision of the question whether such a clause in a will was valid. Universally, except in the Wisconsin case, the question is discussed solely as one of public policy.

We are unable to apply Section 10 of Article II as a constitutional mandate that no forfeiture of a legacy left by a will shall be declared for violation of the condition annexed to the legacy. The question is one involving the right of an individual to make disposition of his own property. In this case the appellant had his day in court, and was heard upon the question whether the instrument was the will of his father. He attacked the will on the ground that the testator was unduly influenced in its making, and was also incompetent to make a will. There was no evidence of undue influence, as was stated by this court upon appeal, 297 Mo. 520, but "there was evidence pro and con on the issue of testamentary capacity." In this case in the event of a contest, there was a gift over of the property to be held in trust for the benefit of the appellant. The testator meant to visit that grave consequence upon him. Some of the courts have sustained the forfeiture provision regardless of whether there was a gift over, and regardless of the question of probable cause. Others have considered probable cause as a matter which ought to constitute exception. Others, including the Supreme Court of the United States, give effect to the gift over as a conditional lim-

itation upon the legacy, taking the view that by violation of the condition under which the legacy was given, the legacy, *ipso facto*, vests in the other designated person, and considering also that the condition annexed, is ''a material ingredient in the legacy.''

Brandenburger v. Puller, 266 Mo. 534, was a suit upon a contract. There was a will containing a clause of forfeiture, by any legatee contesting the validity of the will. Certain legatees instituted a contest. Before trial, some of them entered into a contract with the defendant Puller, the legatee to whom the greater portion of the estate was given, whereby they agreed, that without further objection on their part, the will might be proven, and that upon payment to them by Puller of a stipulated sum, their interest, whether as heirs or legatees, should vest in Puller. They performed the agreement on their part, by appearing in court and announcing their desire to no longer prosecute the contest, and informing the court of their agreement. One legatee, not a party to the agreement, was permitted to plead as party plaintiff, and prosecuted the contest, which resulted in a judgment establishing the will. Puller did not pay as agreed, and the legatees, parties to the agreement, sued for failure to pay the stipulated sum. This court (Division Two) sustained the validity of the agreement, on the ground that there was no fraud in its making, and the forbearance of the contestants to proceed was a sufficient consideration for the promise of the defendant, and it was said, at page 541: ''By such forbearance the proponents of the will gained its establishment, insofar as the threatened contestant is concerned, and he, in turn, surrenders the power secured to him by law to protect rights which he believes exist, and which he otherwise might have legally established. *We know of no rule of public policy which requires a person to contest his ancestor's sanity*, or to continue a costly suit to the depletion of his own funds and those of the estate after his own rights have been conceded and secured.'' (Italics ours.) While what was there said may be regarded to some extent as *dictum*, it is nevertheless in line with the authorities in the ruling that public policy does not require an heir to contest the sanity of his ancestor.

In the trial of the case at bar all of the record made, including all the testimony, in the suit to contest the will, was put in evidence, and is a part of the record in this case. Under the view we take, it is not necessary to go into a discussion of the question of probable cause, under the evidence introduced to sustain and to combat the will. The plaintiff was more than forty years old at the time of the trial. He did not take the stand in the suit to contest the will, but his deposition taken by the proponents, was read in evidence. Since early manhood he had never lived with, nor near, his father, but had lived in many places for different periods, following various oc-

cupations, and succeeding in none. In the opinion on appeal in the
will contest, there is given the following summary of his career and
character (297 Mo. 520): ''Plaintiff had given his father a great
deal of trouble. He had served one term in the California peniten-
tiary, and had been convicted of vagrancy and given hours in which
to leave the town in which this occurred. He is shown to have been
a vicious and profligate man. This is proved by records, letters and
plaintiff's own admissions.'' In the same opinion, while there is
no direct reference to the fact that the will contained a ''no-contest''
clause, there is in the closing paragraph of the opinion, l. c. 526, the
following: ''It is argued that the trial court erred in admitting
judgments showing plaintiff's conviction, on pleas of guilty, of va-
grancy. Plaintiff's own admissions that he was so convicted and
pleaded guilty were already in the record without objection. Whether
or not the judgments were technically admissible, they could not,
in these circumstances, be held prejudicial. Further, plaintiff's ad-
mission that he told testator of these convictions is also in evidence
without objection or explanation. The fact was competent upon the
issue whether there was a *reason for the limitations upon the de-
vise to plaintiff*. One conviction was subsequent to the execution
of the will and codicil, but *was relevant to the question of the rea-
sonableness of testator's adherence to the will and codicil as drawn.*''
The italics are ours.

We have in this case the will of an old man who had accumulated
a considerable fortune, which by his will, and without the exercise
of an undue influence by any one, he devoted to the benefit of his
widow and four children. After payment of his debts, and the giv-
ing of his household belongings to his wife, he provided for a division
of his estate into five equal parts. Under the terms of the will, as
modified by the codicil, the widow and three of the children are given
their shares absolutely. The remaining one-fifth was to be held by
a trustee, with the provision that the income should be given to the
remaining son, this appellant, during his natural life; and, at his
death, that one-fifth should go to the other beneficiaries. The tes-
tator followed that by inserting the clause of forfeiture for contesting
the will, which has been heretofore set out. This clause does not
refer specifically to the appellant, but is general in its terms. Never-
theless, the whole will, the natural relation of the legatees to the
testator, their rights under the law if there had been no will, and
the circumstances peculiar to the appellant, all point inevitably to
the conclusion that the testator intended to make and did make the
forfeiture clause ''a material ingredient,'' an integral part, of the
legacy given to the appellant. The testator made provision for an
income to appellant during his natural life, to be derived from one-
fifth of his estate, but unmistakably intended to provide and did

provide for the preservation of the part devoted to producing that income, so that, upon the death of the appellant, it should remain for the benefit of the other beneficiaries or, so that, if appellant rejected the provision made, by contesting the will, such one-fifth should go immediately to the other beneficiaries. The legacy was given to appellant to have upon certain terms, and since, as we think, there was no consideration of public policy which required him to dispute the sanity of his father, there is now no consideration of public policy which requires the court to relieve him from the consequences of the choice he made.

The judgment must be affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—This cause coming into Court en Banc from Division One, the foregoing opinion of LINDSAY, C., is adopted as the decision of the court. All the judges concur, except *White, C. J.,* and *Ragland, J.,* who dissent.