BAIRD LIGGETT v. MARY H. LIGGETT ET AL., Appellants.—108 S. W. (2d) 129.

Division Two, August 26, 1937.

*George E. Kimball, Prince & Beery, S. M. Mandell* and *Ruby D. Garrett* for appellant.

214

*William B. Dickinson* and *Martin B. Dickinson* for respondent.

COOLEY, C.—This action was tried below, on amended pleadings, as an action to determine title to eighty acres of land in Jackson County, specifically described in plaintiff's second amended petition upon which the case was tried. It was tried to a jury and at the close of the evidence the court directed a verdict for the plaintiff, which was accordingly returned. Judgment was entered accordingly, from which defendants have appealed. Plaintiff is a son and five of the defendants are children of Mary H. Liggett (now deceased), they being all of her children and heirs. The other defendant and appellant is George E. Kimball, executor and trustee named in the will of Mary H. Liggett. The eighty acres of land in controversy were devised by Mary H. Liggett, by her will, duly admitted to probate, to plaintiff, Baird Liggett. ·Defendants claim that said Baird Liggett forfeited said devise by contesting his mother's will, in violation of a provision therein contained. That contention furnishes the subject matter of this appeal. If plaintiff did not so forfeit, his title to the land in question is clear and indisputable.

Mary H. Liggett was the daughter and only child and heir of one Jeremiah Baird, who died in 1905 owning 613.25 acres of land in Jackson County, Missouri, of which the eighty acres in question is a part. Said Mary inherited said land from her father and appeared of record to own it when she made her will and at her death. At Jeremiah Baird's death all of said land was subject to a $9000 deed of trust, which encumbrance was subsequently paid off.

Plaintiff's original petition herein was filed March 31, 1932, in the lifetime of his mother, Mary H. Liggett, naming as defendants said Mary and plaintiff's five brothers and sisters, who, with himself, constituted all of the children and prospective heirs of said Mary. In it plaintiff alleged that said $9000 encumbrance had been paid by him and the other named defendants and that he had paid more than one-sixth thereof, and was entitled to an undivided one-sixth of all said real estate, subject only to his said mother's interest, which in said petition he asserted was in fact only a life estate. Said petition prayed judgment ascertaining and defining the title and interests of the parties and that he be decreed the owner of an undivided one-sixth interest in all of said 613.25 acres. A notice of *lis pendens* was also filed.

Mary H. Liggett, by her attorney, George E. Kimball, filed a demurrer to that petition, which was overruled, and then filed a motion to make more definite and certain, which was pending and undisposed of at her death.

With matters in that shape Mary H. Liggett, on July 16, 1932, she being then well advanced in years, executed her will, here involved. It was drafted by her attorney, George E. Kimball, an able and experienced lawyer, whom she therein named as executor and as trustee of certain trusts therein created. Mrs. Liggett died twenty-three days later. The will was duly probated. By said will the testatrix devised to plaintiff the eighty acres here in question, to her other children certain specifically described real estate, including a life estate to her son Hal H. Liggett in described lands with certain attached conditions not necessary here to relate, to several church organizations certain specific bequests, and the residue of her estate to George E. Kimball in trust for the Salvation Army. The will contained this forfeiture clause:

"Fourth: Should any one or more of my children legally contest, this, my Last Will and Testament, and thereby attempt to break such Will, or in any manner alter its provisions, or change the portion given to such child or children, then, in such an event, the portion of my said lands or other property given, bequeathed and devised in this Will to such child or children, shall be revoked and shall not be so given to such child or children, nor shall any other portion of my property be given to said child or children, but the lands hereby devised to such child or children so contesting this Will, shall in such an event be given to and is hereby devised to the Salvation Army, upon the same conditions and restrictions as set forth in Letter (L), and the said child or children so contesting this Will shall by such act be disinherited."

The will further provided that tenants in possession of any of testatrix' lands should retain possession until the end of the rental year during which she might die. As to the eighty acres devised to plaintiff, that period ended February 28th or March 1st, 1933, which was the earliest time plaintiff could obtain possession of the eighty acres devised to him if he claimed under the will.

After the death of Mary H. Liggett and on about November 22, 1932, plaintiff filed in the circuit court suggestion of her death and that the cause should be revived as to her in the name of her executor and trustee, Kimball. Appellants' abstract of record does not clearly show whether or not an order of revivor was entered of record but this, perhaps, is not here important. Kimball, as executor and trustee, appeared and the cause proceeded with him, in said capacities, as a party defendant.

Thereafter, about May 15, 1933, plaintiff filed his first amended petition, in which he asserted that his mother, being desirous of having the assistance of her children in paying off said $9000 encumbrance and intending that all of said land should go at her death to her six children agreed with said children, and especially with plaintiff,

that if said children would aid her in paying off said encumbrance she would retain title to all of said lands so that they would descend to her said children; that he, plaintiff, agreed to said proposition and fully complied therewith on his part; that his brother, Hal H. Liggett, one of the defendants, importuned and attempted to persuade their mother to sell said lands, which would have rendered her unable to carry out her agreement with plaintiff; that she was then physically weak and unable to resist the importunity of her son Hal, and was about to contract to sell said lands, but, knowing that plaintiff was unwilling that the lands be sold and being desirous of carrying out her agreement with him, she agreed with him to deed him the eighty acres here in question "by way of advancement." It appears from said first amended petition that the alleged contemplated sale of the lands was not made and that plaintiff's mother did not deed him said eighty acres, but it is alleged that said Hal was still attempting to prevail upon his mother to sell all of said lands and that plaintiff, believing she was about to do so, thereby making it impossible for her to carry out her agreement with plaintiff, and believing that her physical condition was such that she would be unable to resist the importunity of her son, Hal, plaintiff instituted the original suit "so as to protect and preserve his right and enable his mother to keep faith with her promise; that this plaintiff has at all times since the filing of this suit been ready and willing to comply with said agreement on his part and accept said eighty acres of land as his full share of said real estate," and that his mother was at all times ready and willing to perform her part of said agreement but for the "undue influence and interference" of said son, Hal; that his mother died testate and by her will devised to plaintiff said eighty acres, "thereby attempting to carry out her promise and her agreement to vest in him (plaintiff) the eighty acres aforesaid. . . ." That petition further asserted that by reason of the facts pleaded he was entitled to said eighty acres and prayed judgment ascertaining and decreeing the title thereto to be in him. In said first amended petition plaintiff did not assert claim to any interest in the other lands of testatrix, nor challenge her title to any of the lands devised, nor did he assail the validity of her will.

Going back a little in point of time, on the night of February 28, 1933, when the tenancy of the tenant then in possession of said eighty acres expired, plaintiff attempted to take possession of said eighty. The tenant was ready to and did vacate that night or the next morning. It is a close question, on the record in this case, but one we need not here decide, whether or not plaintiff technically obtained possession. Kimball, as executor and trustee, had leased the premises to a tenant of his own, who appeared and demanded—and took—possession. If plaintiff did not obtain possession, legally speaking,

it was because he was prevented by Kimball's action. If he did, for an hour or so, have technical possession he was ousted by Kimball. It is sufficient for the purpose of this case to say that it appears beyond dispute that plaintiff made every reasonable effort to take actual possession, claiming at that time to be entitled thereto under his mother's will.

It appears that between the date of testatrix' death and February 28, 1933, there had been a good deal of correspondence between Kimball and plaintiff's attorney relative to dismissal of plaintiff's suit, which the court excluded, and which therefore, is not before us, there being no point made on its exclusion, except as to one letter, which will be referred to hereafter. It sufficiently appears from the record, however, that at said time, February 28, 1933, Kimball was taking the position that plaintiff, by failing or refusing to dismiss his suit, had contested his mother's will and thereby forfeited his devise.

The suit was not dismissed. There followed court proceedings, such as demurrers, motions, etc., which need not be detailed. On June 14, 1934, defendants filed an answer to plaintiff's amended petition which is not set out in the abstract of record. On September 14, 1934, they filed an amended answer, admitting some allegations of plaintiff's first amended petition, denying others, and denying that testatrix devised to plaintiff the lands in question "to carry out so-called promises *or for any purpose.*" (Italics ours.) That answer did not contain a plea of forfeiture.

Thus matters stood on October 3, 1934, the date which had been fixed for trial. On that date, by leave of court, plaintiff filed his second amended petition, which is short, evidently based upon Section 1520, Revised Statutes 1929 (Mo. Stat. Ann., p. 1682), in which he alleged that he was the owner and entitled to possession of said eighty-acre tract, describing it; that defendants claimed title and interest adverse, hostile and injurious to him; and praying adjudication of the interests of the parties.

To said second petition the defendants filed what they denominated an answer and cross-petition, in which they alleged in substance: Several of the provisions of Mary H. Liggett's will, including the forfeiture clause above quoted; plaintiff's claim in his original petition to an undivided one-sixth of the lands whereof Jeremiah Baird died seized, subject to a life estate in testatrix; the revivor of said action by plaintiff after his mother's death; and "That the revival of said suit against said Mary H. Liggett was a legal contest against her Will and particularly of paragraphs Third and Fourth (letter (L) thereof above quoted), (forfeiture clause) in that said suit then pending directly challenged her legal title to the lands devised by her and if successful would have destroyed her entire plan of distribution of her lands in the manner and in the proportions set up in said

Will, and that the Salvation Army of America would have been deprived of all interest in her Estate, and the portions of lands given to her heirs changed."

Said "answer and cross-petition" further alleged that plaintiff, by procuring revivor, had reaffirmed the claims made in his original petition and had elected to "change his portion under the said will and to recover whatever interest he might have in the lands in controversy through his own legal action rather than to accept the conditional bounty of his mother, Mary H. Liggett;" that because of said revivor Kimball, as executor and trustee, had declared a forfeiture and had refused to give plaintiff possession of said eighty acres, and took possession thereof as trustee for the Salvation Army; that by his first amended petition plaintiff had renewed his assault upon his mother's title, but that in his second amended petition (upon which the case was tried) he had abandoned his claim of title through his grandfather, Jeremiah Baird, had acknowledged the "fee title" of his mother, testatrix, but sought to recover said eighty acres, "not as a bounty from his mother but upon his demand under a so-called contract, thus resting his entire case on said so-called contract;" and that "because of said conduct," plaintiff had forfeited his devise. Said "answer and cross-petition prayed the court to determine and adjudge the title of all parties."

Plaintiff's testimony at the trial was in substance and effect that he was claiming and had all along claimed the eighty acres under the will; that he did not claim any interest in the lands or property disposed of by the will except said eighty acres, as therein devised to him; that he was not contesting the will and at no time since his mother's death had had any thought of so doing or of disputing her title to the lands devised by her in said will. There was no substantial dispute of that testimony. Kimball testified for defendants but his testimony was mainly in regard to efforts he had made to get plaintiff to dismiss his suit after Mary Liggett's death, particularly before March 1, 1933, when the lease of the tenant of said eighty acres expired, and his refusal to let plaintiff have possession because, in his opinion, plaintiff had forfeited his devise by refusing to dismiss his suit. There was offered a good deal of correspondence, by letters, between Kimball and plaintiff's attorney, which the court refused to admit in evidence. No point is made on this appeal regarding the rejection of this evidence except as to one letter, which will be referred to hereafter. In general, however, it may be stated that it tended to show that Kimball was contending that plaintiff, by refusing to dismiss his suit, was contesting his mother's will and plaintiff's attorney was contending that plaintiff was not contesting the will and had no intention of doing so. There was admitted, however, enough testimony from Kimball to show that he regarded

plaintiff's refusal to dismiss the suit as, in effect, a contest of the will, resulting in a forfeiture of plaintiff's devise, and that he denied plaintiff possession of the eighty acres in question on that theory. Further facts, if necessary, will be stated in the course of the opinion.

In our opinion, on the conceded facts and under the pleadings on which the case was tried, plaintiff did not contest his mother's will and did not forfeit the devise therein made to him. We need not consider any question of departure or change of cause of action as between plaintiff's original petition and his second amended petition. No such question is raised. The cause was tried on the second amended petition and defendants' answer thereto. Prior pleadings, as pleadings, may be treated as abandoned, Spotts v. Spotts, 331 Mo. 917, 55 S. W. (2d) 977, but, since they were introduced in evidence, they are pertinent for such evidentiary value as they may have. On the pleadings upon which the case was tried plaintiff simply claimed title to the eighty acres in question and defendants denied his claim on the ground that he had forfeited his title by contesting his mother's will, through which alone he could be entitled to claim. Those pleadings present no issue as to Mary H. Liggett's title, nor does plaintiff's evidence disclose any dispute thereof. Neither need we consider the question of the validity of a forfeiture provision in a will, such as that here involved. That question was considered and numerous authorities reviewed in In re Chambers' Estate, 322 Mo. 1086, 18 S. W. (2d) 30, 67 A. L. R. 41, wherein it was held that such a provision is enforceable. But that question is not raised here. Both sides seem to treat the provision as valid. The question is, did plaintiff "legally contest" the will, within the meaning and intendment of that instrument?

The filing of this suit and the claim of a one-sixth interest made in plaintiff's original petition cannot be construed as a contest of the will. There was no will then in existence. When testatrix made her will she knew that suit was pending, as did the draftsman of her will, an able and experienced lawyer, then her attorney. If she meant to make the devise to plaintiff conditional upon his dismissing the suit it would have been easy to say so in clear and unmistakable terms. She did not so say. Instead she said that if any one or more of her children should "legally contest" the will and "thereby,"—that is, by such legal contest—attempt to *break the will,* alter its provisions or change the portion given to such child or children, such child or children should forfeit the share or shares devised. Our statutes, Sections 537, 538, 539, Revised Statutes 1929 (Mo. Stat. Ann., pp. 326-333), provide how and in what time wills may be contested and the conclusive effect of the probate thereof if not so contested. The alleged contest herein clearly does not come

within the purview of those statutory provisions. If testatrix did not know of said statutes it is not to be doubted that her attorney, who wrote her will, did. Why, then, the use of the language ''legally contest'' and ''thereby'' attempt to break the will, etc., instead of saying in plain terms that plaintiff must discontinue his then pending suit, if the latter was what testatrix had in mind? We think it more likely that what she really had in mind was that some of her children might attempt to break the will because of the bequests and devises made to church organizations and especially to the Salvation Army, thereby depriving them of a large portion of her estate. Be that as it may, it is clear from her will that she meant for plaintiff to have the eighty acres in question and no more. Under the pleadings and evidence he is claiming only that, and claiming it under the will, as it was devised to him. The judgment awarded him only what the will gave him.

It is urged here and was below that plaintiff cannot prevail, even though he claimed and got only the eighty acres devised to him, because he claimed it as of right, under an alleged, but unproved, contract, rather than as a bounty from his mother. We cannot see that this makes any particular difference, under the circumstances shown. Whatever the reason that actuated testatrix in making and plaintiff in accepting the devise the fact remains that she did make it, as she had a right to do, and he accepted it as his full portion of her estate. He claims no more, and has not attempted to interfere with or obstruct the devolution of the remainder of the estate or the carrying out of the provisions of the will.

Much is said by appellants in their brief about plaintiff's refusal to dismiss his suit prior to March 1, 1933. It was because of such refusal that defendant Kimball attempted to declare a forfeiture and refused plaintiff possession of said devised lands. Plaintiff, while asserting that he had had no thought of contesting his mother's will, seemed somewhat hazy as to why he had not dismissed the suit. He said he had left that matter to his attorney. There was offered, as we have indicated, a good deal of correspondence between Kimball and plaintiff's attorney relative to that matter, indicating that Kimball was contending that by continuing the suit plaintiff was, in legal effect, contesting the will and plaintiff's attorney was contending that he was not doing so and did not intend to do so. That correspondence was not admitted in evidence. If it had been admitted it might have tended to show a reason, consistent with plaintiff's contentions, for the failure to dismiss his suit. Since that evidence was rejected we cannot consider it in determining the propriety of the court's action in directing a verdict for plaintiff. It does sufficiently appear from the record, however, that at said time plaintiff was claiming and attempting to take possession as devisee under his

mother's will and that Kimball denied him possession on the theory that he had forfeited his devise by failing to dismiss his then pending suit. It is also evident from the record that defendants were then questioning plaintiff's title to said eighty acres. No point is here made as to the rejection of said correspondence, except as to one letter, which we shall refer to later.

If plaintiff had not lost his rights by forfeiture under the will when he thus attempted to take possession of the lands devised to him it is clear he did not do so thereafter. His first amended petition shows that he was claiming under the will and not disputing his mother's title to any of the property she thereby disposed of. In defendants' answer to the second amended petition it was alleged that plaintiff had abandoned any claim of title from his grandfather, Jeremiah Baird, and "acknowledged the fee title of his mother, Mary H. Liggett, deceased," which was true. The trial proceeded on the theory on plaintiff's part that he was entitled to the eighty acres under his mother's will and on defendants' part that plaintiff had forfeited his devise by failing to dismiss his suit.

Forfeitures are not favored and before they will be adjudged there must be substantial evidence justifying such declaration. Plaintiff's suit, as we have said, was instituted in his mother's lifetime and before her will was executed. It could not on any theory be construed in its inception as a contest of her will. After testatrix' death it was revived and continued. It could no longer proceed without revivor as to Mary H. Liggett. But, notwithstanding the revivor, after the execution and probate of Mary H. Liggett's will plaintiff claimed only the property devised to him by that will. Plaintiff's original claim of a one-sixth interest in all of the land was abandoned and by his amended pleadings, as we have shown, he claimed only the land devised to him. That claim was disputed.

Under the circumstances shown herein we are of the opinion that plaintiff's failure to dismiss his suit did not amount to legally contesting the will so as to work a forfeiture of his devise.

█ Complaint is made of the court's refusal to admit in evidence defendants' Exhibit 6, which was a letter, dated February 21, 1933, written by Kimball, as executor, to plaintiff, notifying plaintiff in substance that the writer construed plaintiff's action in maintaining his suit as a refusal to accept the provisions of the will and that unless the suit was dismissed by February 28th, following, he, Kimball, would consider that plaintiff refused to accept the provision made for him in the will and desired that it be forfeited. The court also excluded a letter written February 24, 1933, by plaintiff's attorney to Kimball, in reply to Kimball's letter of February 21st, in which plaintiff's attorney, Prewitt, said that he did not agree with Kimball's "gratuitous" construction of the will and:

"Insofar as my client, Baird Liggett, is concerned he is willing to accept the provisions made for him in the Will of which you have been appointed Executor. Since the death of Mrs. Liggett he has not indicated by any word or act that he intended to legally contest the Will. As for his part he accepts the 80 acres devised to him as being his part of the estate."

The refusal to admit in evidence said Exhibit 6 was not reversible error, in view of the issues presented by the pleadings and the conceded facts. Said letter expressed Kimball's opinion of the legal effect of plaintiff's refusal to dismiss the pending suit and forecast his intention to treat further refusal as conclusive that plaintiff intended not to accept his devise under the will. Those were matters he was not authorized to determine conclusively. Moreover if that letter had been admitted, then, clearly, Prewitt's reply thereto should have been admitted, in which it was clearly stated that plaintiff was not contesting the will and was willing to accept the eighty acres as his full portion.

A number of cases from other jurisdictions are cited, dealing with the question of what does or does not constitute contest of a will such as to justify enforcement of a forfeiture provision. They are based on facts not analogous to the facts of the case before us. We deem it unnecessary to review and distinguish them. The judgment of the circuit court is affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.