BURKE, Chief Justice.
[¶1] Appellants, E.W. and A.W., the grandchildren of Allen F. Willey, filed suit in the district court seeking to prevent the sale of land held in Mr. Willey's revocable trust. They challenge the district court's grant of summary judgment in favor of Appellees, First Federal Savings Bank of Sheridan, the successor trustee, and the beneficiaries of the trust. The district court determined that Appellants are no longer beneficiaries of the trust as a result of their father's 2014 lawsuit against Mr. Willey and his wife. We affirm.
ISSUES
[¶2] Appellants present the following issues:
1. By the doctrine of res judicata , is an attempt by Appellants' father to file a legal challenge to their grandfather's Trust void where Appellants' father lacked legal standing to file the action?
2. Whether the 2014 in terrorem clause in the Trust, forfeiting the property rights of minor children by the act of a third party, violates the statutory and constitutionally established public policies of the State of Wyoming.
3. Whether, as a matter of law, Appellants' father's 2014 lawsuit challenged only the 2010 Trust Amendment, at a time when the in terrorem clause did not disqualify Appellants.
4. Did the district court err in disqualifying Appellants' father from serving as Appellants' representative in this action?
FACTS
[¶3] The underlying facts of this case are set forth at length in Willey v. Willey , 2016 WY 116, 385 P.3d 290 (Wyo. 2016), and will be briefly summarized here. In 2001, Allen Willey created the Allen F. Willey Trust Agreement and Declaration of Trust, a revocable trust that provided for the management of his assets during his lifetime, and for distribution of the assets upon his death. The Willey Ranch, located in Sheridan County, was included as a trust asset. Mr. Willey served as the trustee of the trust during his lifetime. Mr. Willey's trust initially named his son, Spencer, as successor trustee and the trust ultimately benefitted Spencer's minor children, E.W. and A.W.
[¶4] Mr. Willey amended the trust in 2006 and 2009, adding his wife's daughter and *108 granddaughter as beneficiaries under the trust. In 2010, he executed the Allen F. Willey Amended and Restated Declaration of Trust, which made additional changes to the original trust. Most significantly, the amendment removed Spencer as beneficiary and successor trustee. Appellants, however, remained as beneficiaries.
[¶5] In March 2014, Mr. Willey amended the trust again. The amendment changed the successor trustee to First Interstate Bank of Sheridan and provided that under no circumstances should Spencer or any lineal descendant of Mr. Willey be named trustee. The amendment also added the following in terrorem , or "no-contest" clause, which is the subject of this appeal:
It is my intention that the provisions of my Trust be honored and respected without challenge from my son SPENCER WILLEY, from my grandchildren, from my sisters or their children, or from anyone purportedly acting on behalf of any of the foregoing. Any challenge to this Trust made directly by or on behalf of my son or grandchildren shall immediately terminate any interest in the Trust of any descendant of mine[.]
[¶6] In 2013, Mr. Willey entered into a listing agreement with a real estate broker for the purpose of selling the Willey Ranch. In May 2014, Spencer filed a Complaint for Injunction and Declaratory Judgment against Mr. Willey, individually and as trustee of the Allen F. Willey trust, and Mr. Willey's wife, Bertha. Spencer sought to set aside the listing of the ranch and requested that Mr. Willey be removed as trustee due to incapacity. Spencer also alleged that Bertha Willey had exercised undue influence over Mr. Willey's weakened condition to convince him to sell the ranch instead of leaving it in the trust for the benefit of E.W. and A.W. He sought a declaration that would void any part of the trust permitting sale of the ranch.
[¶7] In May 2015, Spencer amended the Complaint, adding a claim that Bertha Willey had exercised undue influence over Mr. Willey by convincing him to remove Spencer from the trust, reduce the benefits to E.W. and A.W., and grant additional benefits to Mrs. Willey. He further alleged that he had an oral agreement with his father that he would inherit the Willey Ranch, and that the sale of the Ranch constituted a breach of that agreement. The defendants moved for summary judgment on the breach of contract claim, and the district court granted the motion.
[¶8] Approximately one month after the Amended Complaint was filed, Mr. Willey died. The case subsequently went to trial and the jury found that the trust amendments were not the product of undue influence. Spencer appealed, challenging the award of summary judgment and several aspects of the trial, and we affirmed. Willey , ¶ 51, 385 P.3d at 304.
[¶9] In early 2016, while the appeal in Willey v. Willey was pending, Appellants filed the present action through Spencer, who acted as "next friend" for his children.[1] Appellants sought an injunction preventing sale of the Willey Ranch, a declaratory judgment that the in terrorem clause would not apply to them, removal of First Federal as trustee, and damages for First Federal's alleged breach of fiduciary duties. Appellees answered and subsequently moved for summary judgment on the grounds that, due to Spencer's 2014 suit, Appellants were no longer beneficiaries of the trust by operation of the in terrorem clause. Appellants responded by claiming that, in Willey , the district court had determined that Spencer did not have standing to challenge his removal from the trust. They asserted that, because Spencer lacked standing, the 2014 suit did not trigger the in terrorem clause. They also claimed that the in terrorem clause was void because it violated public policy.
[¶10] Following a hearing, the district court granted summary judgment to Appellees. The court concluded that Appellants' claims relating to Spencer's standing in the 2014 suit lacked cogent supporting argument or authority. The court also determined, however, *109 that Spencer had standing to challenge the trust in the 2014 action and that the challenge terminated E.W.'s and A.W.'s interest in the trust. The court further concluded that the in terrorem provision of the trust did not violate public policy. This appeal followed.
STANDARD OF REVIEW
[¶11] We apply the following standard of review to a district court's summary judgment decision:
Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c) ; Metz Beverage Co. v. Wyoming Beverages, Inc. , 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo. 2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." Id. Because summary judgment involves a purely legal determination, we undertake de novo review of a trial court's summary judgment decision. Glenn v. Union Pacific R.R. Co. , 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo. 2008).
Fugle v. Sublette Cty. Sch. Dist. No. 9 , 2015 WY 98, ¶ 5, 353 P.3d 732, 734 (Wyo. 2015) (quoting Singer v. Lajaunie , 2014 WY 159, ¶ 19, 339 P.3d 277, 283 (Wyo. 2014) ). We consider the record from a viewpoint most favorable to the party opposing summary judgment, giving to him all favorable inferences that can be drawn reasonably from the facts set forth in the affidavits, depositions, and other material properly appearing in the record. Fugle, ¶ 5, 353 P.3d at 734.
DISCUSSION
I. Whether Spencer's 2014 suit constituted a "challenge" to the trust
[¶12] In Appellants' first issue, they claim Spencer's 2014 challenge to the trust was void because he did not have standing to challenge the trust. According to Appellants, in Willey , the district court determined that Spencer did not have standing. They claim, "The District Court's judgment was affirmed by this Court, so Spencer's lack of standing must be accorded res judicata effect." Additionally, Appellants assert that "Since Spencer had no standing to challenge the post-2010 Trust Amendments, his entire legal proceeding in the 2014 action was governed by, and its effect determined by, the in terrorem clause that was in effect when he had standing in 2010." As a result, Appellants contend Spencer's 2014 suit did not trigger the in terrorem provision of the trust. We do not agree.
[¶13] Contrary to Appellants' assertions, the district court did not conclude that Spencer did not have standing to bring his suit in 2014. Rather, as noted in Willey , ¶ 26, 385 P.3d at 299, the court determined that, "If the jury found no undue influence on the 2010 amendment, Spencer had no further interest in the trust." This does not amount to a conclusion that Spencer lacked standing. Standing is a jurisdictional question, and a finding that Spencer lacked standing would have constituted grounds for dismissal of the action. Gheen v. State ex rel. Dep't of Health, Div. of Healthcare Fin./ EqualityCare , 2014 WY 70, ¶ 15, 326 P.3d 918, 923 (Wyo. 2014). Spencer's claim that the amendments to the trust were the product of undue influence was tried and submitted to the jury. The jury found no undue influence. As is evident from these facts, the district court did not conclude that Spencer lacked standing to assert his claims.
[¶14] Further, even if Spencer did lack standing to file the 2014 suit, that fact did not prevent him from "challenging" the trust under any interpretation of the word. Spencer filed a complaint seeking injunctive and declaratory relief relating to the terms of the trust, and subsequently alleged additional claims of undue influence and breach of contract. After finding no genuine issue of material fact with respect to the breach of contract claim, the district court granted summary judgment on the merits of that claim. As noted above, the undue influence claim was ultimately tried and submitted to the jury. After a five-day trial, the jury determined that the trust amendments were not the product of undue influence. There is *110 no question that Spencer's 2014 suit constituted a "challenge" to the trust.
[¶15] We are also not persuaded by the claim that, because he lacked standing, the 2014 suit was governed by the in terrorem clause that was in effect in 2010. As noted above, there has been no judicial determination that Spencer lacked standing to bring the 2014 suit. Further, Appellants have provided no cogent argument or pertinent authority in support of the claim that Spencer's alleged lack of standing has any bearing on the trust provisions in effect at the time of Spencer's 2014 suit. Accordingly, we will not consider it further.
II. Whether the in terrorem clause violates public policy
[¶16] In their second issue, Appellants contend the in terrorem provision is void because it violates public policy. We have said that:
In its general sense, public policy refers to the law of a state embodied in its constitution, statutes and judicial decisions. When the constitution and statutes have not spoken on a subject, public policy refers to a principle of law that holds no one can lawfully do that which has a tendency to be injurious to the public or against the public good.
In re Adoption of MM , 652 P.2d 974, 978 (Wyo. 1982). Appellants claim that the in terrorem provision violates public policy because it permits a minor child to be deprived of property by the action of his parent. According to Appellants, this result is contrary to constitutional provisions protecting minors, providing for due process, and providing access to the courts.
[¶17] We begin with the proposition, long established in Wyoming precedent, that it is "the absolute right of the testator to dispose of his property after death as he sees fit, provided he is legally qualified so to do and acts as the law directs." In re Lane's Estate , 50 Wyo. 119, 135, 58 P.2d 415, 419 (1936). In In re Nelson's Estate , 72 Wyo. 444, 466, 266 P.2d 238, 246 (1954), we approved of the following authority expressing the right of the testator to dispose of his property according to his wishes:
The court in the case of In re Goist's Estate , 146 Neb. 1, 18 N.W.2d 513, 521, 522, quoting from a previous case stated as follows: No right of the citizen is more valued than the power to dispose of his property by will. No right is more solemnly assured to him by the law. Nor does it depend in any sense upon the judicious exercise of that right. It rarely happens that a man bequeaths his estate to the entire satisfaction of either his family or friends. The law wisely secures equality of distribution where a man dies intestate, but the very object of a will is to produce inequality.... In this country a man's prejudices form a part of his liberty. He has a right to them. He may be unjust to his children or relatives. He is entitled to the control of his property while living, and by will to direct its use after his death, subject only to such restrictions as are imposed by law. Where a man has sufficient memory and understanding to make a will, and such instrument is not the result of undue influence, it is not to be set aside without sufficient evidence, nor upon sentimental notions of equality.
(Quotation marks omitted.)
[¶18] Based on the rule favoring the testator's choice to distribute his estate as he chooses, we have previously rejected the claim that no-contest clauses are unenforceable as violative of public policy, even where a challenge to the testamentary instrument is made in good faith and with probable cause. In Dainton v. Watson , 658 P.2d 79, 81 (Wyo. 1983), the testator "unambiguously expressed his intent that anyone entitled to a bequest under his will who instituted proceedings contesting the validity of any part of the will would have his bequest revoked." The decedent's sister contested the will on grounds of improper execution, incompetency of the testator, and undue influence. She claimed that "public policy demands that those who contest wills in good faith and with probable cause to believe that a will is invalid should be protected from strict enforcement of the terms of a no-contest clause." Id. , 658 P.2d at 82. She relied upon Section 3-905 of the Uniform Probate Code, which provides that "A provision in a will purporting to penalize *111 any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings." Id. , 658 P.2d at 80.
[¶19] The district court rejected the claim and, on appeal, we agreed with the district court's decision. We concluded that the appellant's position "ignores the overriding policy of this court and the well-accepted principle elsewhere that a testator's intent as determined by the language in his will is controlling." Id. , 658 P.2d at 82.
In the first place, in considering a will, it is the long-accepted position of this court that intent of the testator must govern. Kortz v. American Nat. Bank of Cheyenne , Wyo., 571 P.2d 985 (1977) ; Hammer v. Atchison , Wyo., 536 P.2d 151 (1975) ; In re Gilchrist's Estate , 50 Wyo. 153, 58 P.2d 431, reh. denied 50 Wyo. 153, 60 P.2d 364 (1936). In determining the testator's intent, we can only determine that intent from what the will says; we are not free to write terms in the will that do not, in reality, appear there. Kortz v. American Nat. Bank of Cheyenne , supra ; Hammer v. Atchison , supra ; Churchfield v. First Nat. Bank of Sheridan , Wyo., 418 P.2d 1001 (1966). We will not supply words for a testator where the will is clear and unambiguous. Kortz v. American Nat. Bank of Cheyenne , supra ; Matter of Estate of Lendecke , 79 Wyo. 27, 329 P.2d 819 (1958).
In the case before us, the testator, Verlie O. Altman, quite unambiguously expressed his intent that anyone entitled to a bequest under his will who instituted proceedings contesting the validity of any part of the will would have his bequest revoked. Under our aforementioned rules governing the interpretation of wills it is quite obvious that the district court did not err in declaring the testator's bequest to appellant forfeited and denied. It would have been error for the district court to have done otherwise. The no-contest or in terrorem clause in Verlie Altman's will did not exempt those who challenged the will in good faith and with probable cause from its provisions. The will clearly said anyone who challenged the will would lose his or her share. Therefore, to have applied the terms of the will in the manner in which appellant suggests would require judicial construction where such construction would be clearly improper.
Id. , 658 P.2d at 81. Further, we noted that Section 3-905 of the Uniform Probate Code had not been adopted in Wyoming:
In reaching our decision, we, like the district court, find additional strength for our position from the fact that our legislature has chosen not to incorporate § 3-905 of the Uniform Probate Code into the recently enacted Wyoming Probate Code. Chapter 54, Session Laws of Wyoming, 1980. The Wyoming legislature and the committee that helped draft the new probate code were no doubt aware of the Uniform Probate Code and all of its various provisions; yet they chose not to incorporate § 3-905 or anything like it into our statutes. Appellant urges us now to do what the legislature chose not to do; that is, to judicially implement the provisions of § 3-905 into the body of the probate law in Wyoming. That we will not do.
...
[P]ublic policy in matters dealing with will contest proceedings must be determined from our legislature's enactments or more appropriately here from the absence of any such enactments. If public policy favors the adoption of provisions similar to those found in § 3-905 of the U.P.C., then it is for the legislature to make those provisions part of the probate law of Wyoming and not the courts. We do not intend to judicially do so.
Id. , 658 P.2d at 82.
[¶20] Appellants do not address our decision in Dainton . Rather, they present this issue as a matter of first impression for the Court. They assert that "no binding Wyoming authority has upheld an in terrorem clause that purports to forfeit the beneficiary rights of a non-participating beneficiary who is a minor." While Appellants are correct that this Court has not addressed a no-contest clause like the one at issue here-where the clause is enforced against beneficiaries not participating in a challenge to the testamentary instrument-they have not provided *112 any grounds upon which we can meaningfully distinguish this case from Dainton . Appellants point to the due process and open courts provisions of the Wyoming Constitution.[2] However, they have failed to present any cogent argument explaining how these provisions express a public policy outweighing the policy favoring the testator's ability to distribute his property in any lawful manner. Appellants acknowledge that they have no right to property by inheritance. Indeed, as we have previously noted, Wyoming adopted the common law rule that "a testator is free to bestow his bounty upon those whom he wishes subject to statutory limitations." In re Ray's Estate , 74 Wyo. 317, 332, 287 P.2d 629, 635 (Wyo. 1955). As in Dainton , the no-contest clause at issue here does not deprive Appellants of any statutory or constitutional rights.
[¶21] Other jurisdictions that recognize the validity of no-contest clauses have held that such clauses are enforceable against beneficiaries who do not participate in a challenge to the testamentary instrument. In Tunstall v. Wells , 144 Cal. App. 4th 554, 565, 50 Cal.Rptr.3d 468, 475 (2006), the testator, Robert Wells, amended his trust to provide that if any one of three of his daughters challenged the trust, then the gifts to all three daughters would be revoked. The court rejected the claim that the in terrorem clause violated public policy for the same reasons that we put forth in Dainton :
First, we note that in general, a testator has the right to grant bequests subject to any lawful conditions he or she may select. Beneficiaries of a testamentary instrument have no right to testamentary bequests except subject to the testator's conditions, and it generally is not the role of a court to rearrange those bequests or conditions in keeping with the court's sense of justice. "[I]n the minds of others than the testator, the question whether a will is just or unjust is a matter of opinion, and the policy of the law is to make the disposition under a will in accordance with the desires of the testator." ( Estate of Markham, supra , 46 Cal.App.2d [307] at p. 314, 115 P.2d 866 [ (1941) ].) "[I]t must be conceded that the property of the testator is his to dispose of as he wills, and he is not called upon to consult the wishes or views of his beneficiaries or of juries or courts." ( Id. at p. 314, 115 P.2d 866.) A competent testator therefore has "the right to distribute his property upon such terms and conditions as to him seem just and proper; and the recipient of the testator's bounty is required to partake thereof under the terms provided in the testamentary document, so long as such terms and conditions are not prohibited by some law or opposed to public policy." ( Id. at p. 314, 115 P.2d 866 ; see also Estate of Black , supra , 160 Cal.App.3d [582] at 586, 206 Cal.Rptr. 663 [ (1984) ] [no contest clause creates a condition subsequent upon bequests].)
In this case, Wells had the right to leave Elizabeth's three sisters nothing at all, and he also had the right to leave them relatively modest gifts subject to an individual-specific forfeiture clause. Wells' intentions to impose conditions on the three daughters' gifts generally were within his rights as a testator. And public policy favors his desire to avoid litigation. So the question is whether the policy concerns regarding this no contest clause are so different from those raised by a traditional no contest clause that they require us to find a violation of public policy. We conclude that they are not.
In response to Robyn's and the trial court's conclusion that the particular terms of Wells' no contest clause are so unfair that they trump the traditional public policy of upholding the testator's intent, we *113 point out that the fairness of a testamentary instrument, unless it violates public policy, is not an issue for judicial review. We note that valid wills or trusts may contain terms that might strike outside observers as unfair. We might see it as unfair if a testator gave nothing whatsoever to a dutiful child while giving the entirety of a large estate to the dutiful child's unworthy sibling-but a testator may do that, and we would step dangerously outside our proper role were we to rewrite such an instrument to reflect our sense of justice. We further note that neither we nor the trial court can ever possess the intimate understanding of the internal dynamics and interrelationships within a family that a testator would have. This is another reason why courts generally should defer to a testator's clearly stated intentions, even in situations where a testamentary instrument might seem unfair to an outsider.
Id. , 144 Cal. App. 4th at 565-66, 50 Cal.Rptr.3d 468.[3]
[¶22] Similarly, in In re Houston's Estate , 371 Pa. 396, 89 A.2d 525, 526 (1952), the Supreme Court of Pennsylvania considered an in terrorem clause that provided, "Should my wife ... elect to take against this, my last Will and Testament, I do hereby revoke and make void any provision or provisions for either or both of my sons." The court rejected the executor's claim that the provision was against public policy:
While the wisdom of including such a clause in a will may be open to question the law does not require that the distribution provided by will be wise or even equitable provided the testator has clearly expressed his intention.... [I]f a testator may disinherit his children, he may also condition their legacies so that the happening of a certain event will result in their disinheritance. Here, it is true, the widow was faced with the unfortunate choice of receiving a small legacy or causing the children to lose their bequests, but that, once again, is a question of the wisdom of the testator and not public policy.
Id. , 89 A.2d at 526 (citations omitted).
[¶23] In Perry v. Rogers , 52 Tex.Civ.App. 594, 114 S.W. 897 (1908), the testator was survived by his fourth wife, the children produced from that marriage, and by the children of his first and third marriages. Id . at 898. In his will, the testator made bequests to all of his children, but included the following no-contest clause:
If at any time any should attempt or should proceed in changing or breaking my aforesaid will, then it is my wish and desire that the half interest that I hold and possess in all of my estate, both real and personal, be given and I hereby bequeath the same to my present wife for the benefit of [the] sons of my present wife by me.
Id. at 898. As in California and Pennsylvania, the Texas court upheld the in terrorem clause following a challenge by the children of the testator's first marriage:
The intention being plain, that to give it effect will operate to deprive devisees innocent of any attack on his right to dispose of the property of the benefit it conferred upon them furnishes no reason why his will should not be enforced as he intended it should be. The condition upon which such innocent persons should hold under the will not operating to violate the law, nor in contravention of good morals or public policy, the courts cannot do otherwise than enforce it. Within the bounds suggested the law conferred upon the testator full power freely to make any disposition he desired to make of his property. Having kept within those bounds, whether he exercised the right he possessed wisely or unwisely, justly or unjustly, is not for the courts to determine. It is true, as appellant argues it is, that to construe the will as we have indicated it should be construed might operate to permit one of the devisees to elect for all, and by his election to attack the will, effect a forfeiture as against those willing to accept under it....
*114 "When," said a writer on the subject, "a testator has made known his purposes in respect to his property by the use of plain and unambiguous language, though his purposes may seem unreasonable, unjust, or absurd to others, his will is its own expositor, and a law unto the court, where it violates no principles of law or morality." 30 A. & E. Ency. Law (2d Ed.) p. 663, and authorities there cited; 1 Underhill on Wills, § 105.
Id. , 114 S.W. at 899. Notably, the court was not swayed by the fact that the appellant was a minor at the time of the will contest:
It is further urged on behalf of appellant that a forfeiture of the devise to him could not be accomplished, as determined by the judgment, because he was a minor. If the forfeiture urged depended upon some act, or failure to act, on his part there might be force in the contention. But it does not. It was accomplished as the result of the conduct of others, which by the terms of the will was to have that effect. Therefore the fact that he was a minor was of no importance.
Id.
[¶24] In sum, in light of our decision in Dainton and the clear authority in Wyoming supporting a testator's ability to dispose of his property as he chooses, we cannot conclude that the in terrorem clause in Mr. Willey's trust violates public policy. What we said in Dainton remains true today: our legislature has not chosen to implement any provisions similar to Section 3-905 of the Uniform Probate Code. We decline to impose a policy that our legislature has implicitly rejected.
III. Effect of trust challenge during Mr. Willey's lifetime
[¶25] In Appellants' third issue, they claim Spencer's 2014 suit could not have constituted a "challenge" to the trust because the suit was filed during Mr. Willey's lifetime. Further, Appellants assert that, because Mr. Willey did not remove them as beneficiaries after the 2014 suit was filed, he must have intended for the in terrorem provision not to apply. We do not agree.
[¶26] Appellants claim, "There is abundant case law holding that instituting a suit while the testator was alive, and prior to the execution of the will, could not be construed as a contest of the will, such that the in terrorem clause would not apply." As support for this proposition, Appellants cite Liggett v. Liggett , 341 Mo. 213, 108 S.W.2d 129 (Mo. 1937), In re Estate of Pasternack , 52 Misc. 2d 413, 275 N.Y.S.2d 703 (N.Y. 1966), and In re Estate of Seymour , 93 N.M. 328, 600 P.2d 274 (N.M. 1979). Each of these cases, however, is distinguishable.
[¶27] In Liggett , 108 S.W.2d 129, the testator created her will after the plaintiff, the testator's son, filed suit to determine title to property that had been inherited by the testator from her father. The plaintiff alleged a claim to the property inherited by his mother as a result of the fact that he, along with his siblings, had paid off an encumbrance on the property at the time it was conveyed. Id. , 108 S.W.2d at 130. Because the plaintiff initiated his suit prior to the creation of the testator's will, the Missouri Supreme Court held that the suit "could not on any theory be construed in its inception as a contest of [the testator's] will." Id. , 108 S.W.2d at 134. In the present case, the challenge to the trust was brought after the trust was created and amended.
[¶28] In In re Estate of Pasternack , 275 N.Y.S.2d 703, the forfeiture clause of the will at issue stated:
In the event that any of my devisees or legatees herein named shall institute or prosecute any claim or action to contest or set aside this my Last Will and Testament or shall testify adversely to the probate of this instrument, then such bequest, devise or legacy herein given to such person or persons shall be thereby forfeited and annulled and shall revert to and inure to the residue of my estate.
Id. , 275 N.Y.S.2d at 704-05. At some point during the testator's lifetime, the petitioner initiated proceedings to have the testator declared incompetent. Id. , 275 N.Y.S.2d at 705. The executor alleged that the purpose of the proceedings "was to defeat and destroy any will which Sarah Pasternack would make *115 and publish during her lifetime."[4] Id. The court noted that New York courts had strictly interpreted similar no-contest provisions, and that they had "refused to declare a forfeiture where the precise wording of the condition did not take in exactly the particular act or conduct of the legatee." Id. In light of this rule and the specific language of the no-contest provision, the court concluded that incompetency proceedings initiated during the lifetime of the testator did not trigger the no-contest provision of the will. Id. In contrast to Pasternack , the in terrorem clause in the present case expressly prohibited "any challenge" to the trust, and we have determined that the 2014 suit did, in fact, constitute a challenge to the trust.
[¶29] Finally, in In re Estate of Seymour , 600 P.2d 274, the testator's will, which was created while she was still married, provided that her estate was to pass to her husband. She subsequently divorced her husband and did not execute a new will before her death. Id. , 600 P.2d at 275-76. The parties disputed whether the provisions of the will relating to the divorced spouse were revoked immediately upon the testator's divorce from her husband. Additionally, the testator's stepson contended that the testator's son had been disinherited by operation of the no-contest provision of the will. The New Mexico Supreme Court disagreed, concluding that "where the circumstances upon which a will is based have changed substantially between the time of its execution and the time of its probate, courts should not discourage contests." Id. , 600 P.2d at 278. The court also noted that, in New Mexico, no-contest provisions "are not effective to disinherit a beneficiary who has contested a will in good faith and with probable cause to believe that the will was invalid." Id. The court explained:
No-contest provisions are valuable will devices. They serve to protect estates from costly and time-consuming litigation and they tend to minimize family bickering over the competence and capacity of testators, and the various amounts bequeathed. However, the function of the court is to effect the testator's intent to the greatest extent possible within the bounds of the law. To strictly construe no-contest provisions in the face of obvious indications of unresolved legal questions, such as were present in this case, could result in complete destruction of a testator's intent....
Whenever a beneficiary contests a will in the face of a no-contest provision, he does so at the peril of his bequest. But, when he does so in good faith and for probable cause, his bequest should not be jeopardized by the contest. The court should infer the existence or absence of good faith and probable cause from the totality of the circumstances.
Id. In contrast to Seymour , Wyoming does not recognize an exception to enforceability of no-contest clauses where a will contest is made in good faith. Further, in this case, Appellants do not allege any changed circumstances between the time of the creation of the trust in this case and Mr. Willey's death. Ultimately, the decision in Seymour says nothing on the subject of whether a challenge to a testamentary instrument during the testator's lifetime triggers the provisions of a no-contest clause. As indicated by the foregoing discussion, Appellants' reliance on Liggett , Pasternack , and Seymour is misplaced. Absent any authority supporting Appellants' contention, from Wyoming or elsewhere, we are not persuaded that the 2014 suit could not have constituted a challenge to the trust because it was initiated during Mr. Willey's lifetime.
[¶30] We are also not persuaded by Appellants' claim that, because Mr. Willey did not remove them as beneficiaries after the 2014 suit was filed, he must have intended for the in terrorem provision not to apply. We must interpret the intent of the settlor according to provisions contained in the trust. "The rules of construction of a trust agreement are simple. A trust agreement is governed by the plain language contained in the four corners of the document." In re Estate of George , 2011 WY 157, ¶ 65, 265 P.3d 222, 235 (Wyo. 2011). Our decision here is governed by the *116 plain and unambiguous language of the in terrorem provision. Mr. Willey's reasons for not removing Appellants as beneficiaries of his trust have no bearing on our interpretation and enforcement of the document.
IV. Disqualification of Spencer as Appellants' Representative
[¶31] In their final issue, Appellants contend the district court erred in prohibiting Spencer from serving as the children's representative or "next friend" in this case. Appellants quote W.R.C.P. 17(c), relating to representation of minors, and Wyo. Stat Ann. § 4-10-303, governing representation of beneficiaries of a trust. However, they present no argument whatsoever with respect to this issue. As a result, we will not consider it. Burnett v. Burnett , 2017 WY 57, ¶ 7, 394 P.3d 480, 482 (Wyo. 2017).
[¶32] Affirmed.

The district court subsequently prohibited Spencer from serving as his children's representative after finding an inherent conflict of interest. The court appointed a GAL to represent the children.

Appellants quote the following sections of the Wyoming Constitution:
Article 1, Wyoming Constitution, § 6. Due process of law: "No person shall be deprived of life, liberty or property without due process of law."
Article 1, Wyoming Constitution, § 7. No absolute, arbitrary power: "Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."
Article 1, Wyoming Constitution, § 8. Courts open to all; suits against state: "All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay."

The decision in Tunstall is particularly persuasive in light of the fact that we have previously indicated an inclination to follow California jurisprudence with respect to no-contest provisions. Dainton , 658 P.2d at 81. This inclination results from the fact that the will contest provisions found in the Wyoming Probate Code were taken from the California Probate Code. Id .

The opinion does not specify whether the incompetency proceedings were initiated before or after the will was created.